539 So.2d 1378 (1989)
Michael Dale LEATHERWOOD
v.
STATE of Mississippi.
No. DP-25-A.
Supreme Court of Mississippi.
February 22, 1989.
*1379 Felice Busto, Washington, D.C., Samuel Walters, Baltimore, Md., for appellant.
Mike Moore, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow, Sp. Asst. Atty. Gen., Jackson, for appellee.
*1380 EN BANC.
SULLIVAN, Justice, for the Court:
Michael Dale Leatherwood pled guilty on December 8, 1981, to capital murder, and was sentenced by a jury on December 9, 1981, to suffer the death penalty. Following affirmance by this Court on direct appeal,[1] Leatherwood sought relief pursuant to the "Mississippi Uniform Post-Conviction Collateral Relief Act," Miss. Code Ann., § 99-39-1, et seq. (Supp. 1988). In consequence, this Court remanded Leatherwood's case to the Hinds County Circuit Court, First Judicial District, with directions to consider whether Leatherwood received effective assistance of counsel prior to his plea of guilty, and also during the sentencing phase of his trial.[2]
On January 12, 1987, the Hinds County Circuit Court entered an opinion and order holding that, as to the guilt phase, Leatherwood received constitutionally effective assistance of counsel; as to the sentencing phase, a new trial was ordered because of the ineffective assistance of Leatherwood's counsel.
The State of Mississippi originally filed a notice of appeal from the above order, but later dismissed its appeal. Leatherwood, therefore, prosecutes the only appeal from the above opinion and order, and has set forth the following issues:
1. Whether the trial court erred in holding that appellant was not prejudiced in entering his guilty plea upon counsel's unreasonable advice; and
2. Whether counsel's ineffective assistance at sentencing rendered the record of that proceeding unreliable for purposes of this Court's appellate review of appellant's death sentence on direct appeal.
Michael Dale Leatherwood pled guilty in December, 1981, to the capital murder of a Jackson, Mississippi, cab driver. The underlying facts of the crime are set forth in "Leatherwood I" and need not be repeated here. Prior to entering this guilty plea, Leatherwood was represented by counsel who had been retained by Leatherwood's father on or about February 23, 1981. From the outset, counsel envisioned a plea bargain between his client and the State whereby the possibility of the death penalty could be avoided. Approximately three weeks before the scheduled trial date, in mid-November 1981, counsel informed Leatherwood's parents that plea negotiations had failed, and that the case against their son would have to go to trial instead. Notwithstanding, counsel continued to negotiate "up until the last minute." Trial was scheduled for December 7, 1981. It wasn't until November 4, 1981, that Michael Leatherwood was first interviewed in depth, and this interview was conducted by counsel's associate. In fact, the lower court found that no meaningful preparation or investigation commenced until early November, 1981, approximately one month prior to trial. The records from the Hinds County Jail established, and the lower court found, that lead counsel spent no more than 37 minutes with his client prior to the trial.
On December 7, 1981, counsel advised Michael Leatherwood to plead guilty to the charge of capital murder. The next day, Leatherwood entered his plea of guilty, and after a sentencing hearing, was duly sentenced to suffer the penalty of death for his crime. It appears that Michael Dale Leatherwood entered his plea of guilty based solely on the advice and consent of his counsel, aided in his decision by his parents, who also relied exclusively on the advice of counsel.
On this appeal pursuant to the "Mississippi Uniform Post-Conviction Collateral Relief Act," our standard of review is as follows:

*1381 Here we are reviewing a finding of ultimate fact [that Leatherwood enjoyed effective assistance of counsel as to guilt phase, and ineffective assistance as to sentencing phase] made by a trial court sitting without a jury. We will not set aside such a finding unless it is clearly erroneous. Put otherwise, we will not vacate such a finding unless, although there is evidence to support it, we are on the entire evidence left with the definite and firm conviction that a mistake has been made.
Merritt v. State, 517 So.2d 517, 520 (Miss. 1987).

GUILT PHASE

I.

DID THE TRIAL COURT ERR IN FINDING THAT LEATHERWOOD WAS NOT PREJUDICED BY ENTERING HIS PLEA OF GUILTY IN RELIANCE UPON THE ERRONEOUS ADVICE OF COUNSEL?[3]
On remand from this Court, Leatherwood's allegations of constitutionally ineffective assistance of counsel were judged according to the two part formula originally set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see Leatherwood v. State, 473 So.2d 964 (Miss. 1985). This now familiar test places upon the defendant the burden of proving[4] that (1) his counsel's performance was deficient, and that (2) but for counsel's deficient performance, the result of the proceeding would probably have been different. Leatherwood, 473 So.2d at 968; see also, Marks v. State, 532 So.2d 976, 978-80 (Miss. 1988).
We made clear in "Leatherwood II" that the two part test of Strickland v. Washington would guide the lower court's inquiry. 473 So.2d at 968-70. This is undoubtedly the law, for the test in Strickland v. Washington "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); accord Reynolds v. State, 521 So.2d 914, 918 (Miss. 1988); Odom v. State, 498 So.2d 331, 333-34 (Miss. 1986); Coleman v. State, 483 So.2d 680, 683 (Miss. 1986). The application of the Strickland test in this context is wholly consistent with our justifiable concern over the "constitutional soundness" of guilty pleas, and our long standing test for determining that soundness, which is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." See Reynolds v. State, 521 So.2d at 916; Odom v. State, 498 So.2d at 333; Coleman v. State, 483 So.2d at 682; Hill v. Lockhart, 474 U.S. at 56, 106 S.Ct. at 369, 88 L.Ed.2d at 208, quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).
All the cases agree further that, in the context of guilty pleas, the "first half of the Strickland v. Washington test is nothing more than a restatement" of familiar standards. Hill, 474 U.S. at 58, 106 S.Ct. at 370, 88 L.Ed.2d at 210 (question is whether "counsel's representation fell below an objective standard of reasonableness."); see also, Reynolds, 521 So.2d at 918 (must show "unprofessional errors of substantial gravity."); Odom v. State, 498 So.2d at 334 (must show that "counsel committed errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment ..."). These statements are merely different ways of saying the same thing, and as will be shown the lower court did not err in finding that Leatherwood had satisfied the first prong.
The trial judge found as a fact under the first prong that Michael Dale Leatherwood was advised to, and did, plead guilty in primary reliance on counsel's advice that a *1382 guilty plea would prohibit the State from presenting any evidence concerning the details of the murder during the sentencing hearing. Counsel felt that by pleading guilty they would give themselves a better chance of avoiding the death penalty since the prosecution would thus "be prevented from presenting the horrible facts of the murder to the jury at both the guilt and sentencing phases of the bifurcated trial." This finding by the trial judge is supported by substantial evidence in the record, and therefore, is not manifestly wrong.
The trial judge then concluded that the defendant met his burden of satisfying the first prong of Strickland because counsel misread Coleman v. State, 378 So.2d 640 (Miss. 1979), and "counsel failed to ... obtain a ruling on the law pertaining to the limitation of evidence" following entry of a guilty plea in a capital case; and also because "investigation of other capital murder cases previously tried before [Judge Coleman] would have revealed that [Judge Coleman] had ruled contrary to counsel's opinion and would probably do so in [Leatherwood's] trial." Thus, counsel's performance in this regard was deficient.
As to the second prong, the trial judge held that Leatherwood did not meet his burden. The court found that the evidence against Leatherwood was overwhelming, that there was no reasonable doubt of his guilt, and that no prejudice resulted to the defendant by counsel advising him to plead guilty. Leatherwood challenges the holding that he suffered no prejudice, and did not, therefore, receive constitutionally ineffective assistance of counsel during the guilt phase.
Before reaching Leatherwood's challenge, however, it should be pointed out that the State seeks in its brief to make an issue out of the trial judge's holding that counsel's performance during the guilt phase was deficient. We will address that issue in order to make clear the correctness of the trial judge's disposition.

A.

WAS THERE DEFICIENT PERFORMANCE?
In response to the State's argument in support of trial counsel's advice, we simply refer to the opinion in "Leatherwood II" where this Court originally addressed Leatherwood's claims of ineffective assistance of counsel, and ultimately remanded the case for the evidentiary hearing which is the subject of this appeal. In pertinent part this Court said:
According to Leatherwood, counsel advised him that if he pled guilty the state would be limited in the evidence it could present concerning the details of the murder during the sentencing phase. This, of course, is not the law. A plea of guilty does not restrict the state from offering evidence of the details of the commission of the crime that would have otherwise been admissible during the guilt phase. (Emphasis added).
473 So.2d at 968.
It is axiomatic that a decision on a question of law decided on a former appeal becomes the law of the case, whether the case be civil or criminal, and will be adhered to on subsequent trials and appeals of the same case involving the same issues and facts. Holcomb v. McClure, 217 Miss. 617, 620-21, 64 So.2d 689, 691 (1953); Carraway v. State, 170 Miss. 685, 687, 154 So. 306, 307 (1934). Our decision, therefore, foreclosed any subsequent argument over the correctness vel non of counsel's interpretation of the law as it stood at the time the plea was entered.[5] As to the first prong of Strickland, the only remaining question on remand was whether Leatherwood's contention was correct, i.e., whether counsel's erroneous interpretation of the *1383 law was the primary reason for advising a plea of guilty. The trial judge found that it was, and as previously stated, this finding is not manifestly wrong.
Applying the law of the case to the facts, counsel's performance in this regard was deficient, and the trial court was correct in so holding. At the least, counsel should have obtained a ruling on the law pertaining to limitation of evidence following the entry of a guilty plea in a capital case, especially since an investigation of other capital murder cases previously tried before Judge Coleman would have revealed that Judge Coleman had ruled contrary to counsel's opinion and would probably do so in Leatherwood's trial.
Even ignoring the law of the case, counsel's reliance on Coleman v. State, 378 So.2d 640 (Miss. 1979), does not render his performance any less deficient. At the least, Coleman unmistakably favored admissibility of evidence concerning the details of Leatherwood's crime. In Coleman, this Court held in clear and unambiguous language that, during sentencing, the State is limited only to presenting evidence "relevant to one or more of the eight enumerated aggravating circumstances" in Miss. Code Ann., § 99-19-101(5) (Supp. 1988).
In Coleman, the State was allowed to present two color pictures "showing where the shotgun pellets hit the victim on the right side of his head, his lower arm, and on the left side of his chest" on the basis that the pictures were relevant to show that the murder was "especially heinous, atrocious or cruel." Id. at 648-49. Similarly then, the horrible facts of the murder in the present case would most assuredly have been admissible under Coleman since the "especially heinous, atrocious or cruel" aggravating circumstance was used against Leatherwood. See Leatherwood v. State, 435 So.2d 645, 648 (Miss. 1983). Further, Coleman instructed that "what is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." 378 So.2d at 648, quoting Spinkellink v. Wainwright, 578 F.2d 582, 611 (5th Cir.1978) (Emphasis in original). By definition then, the horrible facts and details which counsel interpreted Coleman to exclude were clearly admissible per Coleman.[6] Furthermore, Coleman says nothing about the possible limiting effects of a guilty plea.
*1384 Finally other aggravating circumstances were used against Leatherwood.[7] Thus the sentencing hearing door, per Coleman, stood plainly open for the reception of evidence concerning the details of this bizarre robbery-murder scenario, only to the limit of the trial judge's broad discretion.
It escapes us, therefore, how counsel for Leatherwood could have read Coleman to prohibit evidence concerning details of the crime. Beyond this, we cannot excuse his failure to seek some guidance from the trial judge via a pre-sentencing ruling, especially in light of his knowledge that Judge Coleman had ruled unfavorably to his position just prior to Leatherwood's trial. There is no error in the judge's holding that counsel's performance was deficient. Clearly, counsel's advice to plead guilty fell short of the range of competence demanded of attorneys in criminal cases.
The State relies on Evans v. State, 485 So.2d 276 (Miss. 1986), where a similar scenario developed. The defendant in Evans was advised to plead guilty, in part because counsel interpreted Coleman v. State to require the exclusion at sentencing of all evidence of the crime and premeditation. 485 So.2d at 278. In addressing this claim of ineffective assistance of counsel, among others, this Court refused to address the merits, holding instead that the claims were barred per § 99-39-21(4) of the Post-Conviction Relief Act. Id. at 281.
In pure dicta, the court stated that "trial counsel's interpretation of existing law when the guilty plea was entered was not contrary to the law at the time of its entry." Id. at 282.[8] As this passage is dicta, it holds no precedential value, lacks the form of an adjudication, and therefore, does not guide our decision sub judice.
In any event, Evans v. State is clearly distinguishable. While in the present case we know that counsel's erroneous interpretation of Coleman was the primary, if not the only reason for Leatherwood's having pled guilty, we do not know the extent of Evans' reliance on that interpretation in deciding to plead guilty. Also, in Evans, the defendant's request for a hearing was denied even though the defendant argued that an evidentiary hearing was required because in "Leatherwood II" this Court "had sustained an identical claim and remanded to the circuit court for a hearing." Evans v. State, supra; Brief in Support of [Evans'] Motion to Consolidate Misc. No. 1931 and No. 53,754 and in Reply to the State's Responses to Petitioner's Application and Prior Motion to Vacate, at page 8. Obviously then, this Court recognized a significant distinction between the underlying factual claims in Evans and in Leatherwood; otherwise, the evidentiary hearing requested by Evans on the basis of "Leatherwood II" would have been granted the same as it was in "Leatherwood II."[9]

B.

WAS THERE PREJUDICE?
In applying the second prong of Strickland, the trial court held that "[c]onsidering all the factors ... there is no reasonable doubt of [Leatherwood's] guilt; and that no prejudice resulted to the defendant by counsel advising the defendant to plead guilty." Obviously, the trial court went beyond the immediate context of the plea process, and considered the ultimate likelihood of a guilty verdict in analyzing Leatherwood's claim of prejudice.
*1385 The State argues that the trial court correctly applied the standard of Strickland v. Washington, as directed by this Court in "Leatherwood II." Furthermore, they contend, the overwhelming nature of the evidence of guilt, and the ultimate likelihood of an acquittal, can be considered when examining a claim of ineffective assistance of counsel on a guilty plea to determine if prejudice has been shown.
Leatherwood, on the other hand, contends that federal and state law limit the scope of the trial court's prejudice inquiry in this case to the plea process itself, without regard to the overwhelming nature of the evidence of guilt, or the ultimate likelihood of an acquittal. Under state and federal law, it is argued, the correct inquiry is whether but for counsel's error, the defendant would have pleaded guilty and foregone trial. In sum, the defendant argues that prejudice is established where the proof shows a reasonable probability that but for counsel's error, the result of the plea proceeding would have been different.
As to the second prong, the focus is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210. The defendant can satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. Accord, United States v. Gavilan, 761 F.2d 226, 228 (5th Cir.1985); Reynolds, 521 So.2d at 918 (defendant "must show that those errors proximately resulted in his guilty plea and that but for counsel's errors he would not have entered the plea."); Odom, 498 So.2d at 334; Coleman, 483 So.2d at 683. Further, a reasonable probability arises when the ineffectiveness is of "such [sufficient] moment that the integrity of the [proceeding] or our confidence in the outcome has been shaken." Reynolds, 521 So.2d at 918, citing Merritt v. State, 517 So.2d at 520.
Put otherwise in the context of this case, the defendant is entitled to a vacation of his guilty plea if he can show that "he entered his guilty plea in substantial reliance upon the erroneous advice" of his counsel. Coleman, 483 So.2d at 683.
The State points to a portion of Hill v. Lockhart which it contends authorizes the analysis used by the trial judge below. That part of the opinion states as follows:
In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in Strickland v. Washington, supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." Id. [466 U.S.] at 695. [104 S.Ct. at 2068]
474 U.S. at 59-60, 106 S.Ct. at 70-71, 88 L.Ed.2d at 210-11.
*1386 The mistake in the State's reliance on these passages is easily discovered.
First, the Hill court states rather clearly that the "`prejudice' inquiry will closely resemble the inquiry engaged in by" Judge Coleman below in "many", but certainly not all cases. Id. The court then lists two examples of this occurrence, neither of which encompass this case. We are not confronted with a "failure to investigate or discover potentially exculpatory evidence ...," nor are we faced with a "failure to [advise] the defendant of a potential affirmative defense... ." Id.
As the court clearly states, "predictions of the outcome at a possible trial" are proper only "where necessary ..." Id. The case below does not present one of those incidences where prediction of the outcome of trial is necessary. Instead, counsel's erroneous advice to Leatherwood has no significance beyond the context of the plea process itself, and the prejudice inquiry should rightfully have been limited to a prediction of the outcome of the plea process only. The danger of the State's argument is that it compels a holding that a defendant can never be prejudiced in entering his guilty plea upon the erroneous advice of counsel so long as there is overwhelming evidence of guilt, and no reasonable likelihood of an acquittal. As this case pointedly demonstrates, however, the inquiry is not always whether the defendant appears overwhelmingly guilty or not, but is whether the defendant voluntarily and intelligently forewent the quantum of sacred constitutional rights to which he was entitled in the absence of a guilty plea.
We are not alone in our view that a guilt or innocence-focused prejudiced inquiry in the area of guilty pleas presents both theoretical and pragmatic difficulties.
This trial  oriented approach to prejudice in cases of claimed malpractice by counsel in the guilty plea arena surely is not dictated by Strickland, even if one makes the plausible assumption that defendants advancing such allegations may need to show some type of injury stemming from counsel's incompetent advice or other misconduct. The operative language in Strickland suggests that one must assess the effect of the incompetence on the proceeding actually at issue. Indeed, in Strickland, where the prisoner who pled guilty impugned his lawyer's performance only with respect to the sentencing hearing, both the majority and the dissent examined whether, with adequate assistance, the defendant would have escaped death. No one considered the likely results of a hypothetical trial on guilt.
Since Strickland, several courts have rejected [this approach] and held that the appropriate inquiry is whether, "but for" counsel's derelictions, the result of the plea would have been different. This course seems sensible to me. As Judge Cudahy of the Court of Appeals for the Seventh Circuit correctly noted, assessing prejudice in terms of a putative outcome at trial is "unworkable ... because the reviewing court has no trial record to review and consequently no way of evaluating the effect of counsel's errors in relation to the case as actually presented by the prosecution." In addition, insofar as the question of effective representation is inextricably intertwined with the issue of the plea's voluntariness, a trial-related prejudice test does not respond to the basic question whether the defendant voluntarily and knowingly waived his right to trial. Yet some inquiry into causation appears to inhere in any analysis of whether either misinformation or lack of advice, from counsel or trial court, tainted the plea. That being so, it strikes me as useful to equate prejudice with causation: that is, the defendant demonstrates prejudice if he can show that counsel's misconduct played at least a substantial role in inducing the plea.
Berger, The Supreme Court and Defense Counsel: Old Roads, New Paths  A Dead End? 86 Colum.L.Rev. 9, 110-11 (1986) (Citations and footnotes omitted); Accord Coleman, 483 So.2d at 687 (defendant entitled to have plea vacated if he can show *1387 "he entered his guilty plea in substantial reliance upon the erroneous advice" of counsel).
As noted above, the language in Strickland clearly suggests the focus we adopt. There the court stated that a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. (Emphasis added). Several courts have adopted this plea oriented focus in deciding the question. See Sparks v. Sowders, 852 F.2d 882, 884-85 (6th Cir.1988); Czere v. Butler, 833 F.2d 59, 63 (5th Cir.1987); Craker v. McCotter, 805 F.2d 538, 542 (5th Cir.1986); Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir.1986); Thomas v. Lockhart, 738 F.2d 304, 307 (8th Cir.1984). Likewise, we have adopted this approach on more than one occasion. Reynolds, 521 So.2d at 918; Odom, 498 So.2d at 333-34; Coleman, 483 So.2d at 683.
Furthermore, a prejudice test which focuses on the outcome of the plea process itself, without regard to the estimated outcome of a trial on guilt, represents the only logical extension of pre-Strickland, Sixth Amendment Jurisprudence.
Where the accused failed to receive appropriate data regarding sentence, a line of cases prior to Strickland held that the plea's voluntary nature turns on "whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." In the context of claims of inadequate assistance, a post-Strickland standard of prejudice looking to whether counsel's errors caused the defendant to plead guilty, would seem to be consistent with (perhaps even identical to) the type of inquiry just described. That test would thus possess the virtue of familiarity for courts and litigants seeking to apply it. More important, the symmetry would be logical rather than merely formal. Regardless whether the claim is couched in terms of involuntariness or ineffectiveness, the prisoner is making the same complaint  that grossly deficient representation induced him to enter a plea of guilty. Furthermore, if courts required some added demonstration of prejudice in the sixth-amendment setting, defendants would simply clothe their arguments in the garb of "coerced plea" instead of ineffective assistance," thereby subverting doctrinal distinctions.
86 Colum.L.Rev. at 111, (footnotes and citations omitted).
In view of the above, the trial court impermissibly exceeded the proper focus for determining whether Leatherwood has shown prejudice by considering the evidence of guilt, and the ultimate likelihood of an acquittal. Ordinarily, we affirm a trial judge on such findings unless manifestly wrong, provided the trial judge applied the correct legal standard in making his findings. Woodward v. State, 533 So.2d 418, 427 (Miss. 1988); Chisolm v. State, 529 So.2d 630, 633 (Miss. 1988); Watts v. State, 492 So.2d 1281, 1289 (Miss. 1986). However, where as here the trial judge applies an erroneous legal standard in making his findings, we will not hesitate to reverse. Factfindings made under an erroneous legal standard are not protected by our substantial evidence clearly erroneous standard of review.
Assessing counsel's performance from its inception, counsel's advice to Leatherwood was plainly erroneous under the applicable law at the time the plea was entered. In other words, counsel's performance in advising the plea fell below the range of competence demanded of attorneys in criminal cases, and amounts therefore, to deficient performance. Once properly focused, we are convinced further that counsel's deficient performance compromised the integrity of the plea process, rendering the plea involuntary, and that but for counsel's erroneous advice, the defendant would not have pleaded guilty to capital murder. There is substantial evidence in support of the finding that Leatherwood *1388 plead guilty in substantial reliance on the erroneous advice of counsel.
Consequently, the trial judge's finding that Michael Dale Leatherwood enjoyed constitutionally effective assistance of counsel at the guilt phase is erroneous, and requires that we vacate his plea of guilty and remand to the local authorities for such further action as they deem appropriate. Such a resolution is consistent with prior decisions where we have held that "mistaken advice of counsel may ... vitiate a guilty plea." Coleman, 483 So.2d at 683, quoting Tiller v. State, 440 So.2d 1001, 1006 (Miss. 1983), citing Baker v. State, 358 So.2d 401, 402 (Miss. 1978), and Sanders v. State, 440 So.2d 278, 284 (Miss. 1983). See also, Kennedy v. Maggio, 725 F.2d 269, 273 (5th Cir.1984) ("a plea entered in reliance on the defendant's attorney's patently erroneous statement of the law in relation to the facts" cannot be voluntary due to attorney's ineffectiveness).

SENTENCING PHASE

II.

THE RECORD BEFORE THIS COURT ESTABLISHES THAT A DEATH SENTENCE FOR MICHAEL DALE LEATHERWOOD WOULD BE EXCESSIVE OR DISPROPORTIONATE CONSIDERING HIS CRIME AND CHARACTERISTICS.
At the evidentiary hearing below, Leatherwood presented 16 witnesses, in addition to his parents, who testified concerning Michael Dale Leatherwood's background and character. In addition, he presented the testimony of two forensic pathologists to show that Michael Dale Leatherwood did not actually choke, strangle, or apply life threatening force to the victim. There was testimony from a clinical psychologist who opined that Leatherwood was susceptible to the domination of his co-defendant, David Tokman. Finally, there was testimony from an accepted legal expert in the field of death penalty litigation who opined that Leatherwood received ineffective assistance of counsel at his sentencing hearing.
The trial court found in essence that Michael Dale Leatherwood did in fact suffer from constitutionally ineffective assistance of counsel at the sentencing phase of his trial because of counsel's failure to present adequate mitigating witnesses and psychological testimony. A new sentencing trial was ordered accordingly because "there is a reasonable probability that the result of the trial would have been different if the jury had heard the testimony presented at the motion hearing." The State has chosen not to appeal the decision and does not now seek to challenge any aspect of it.
Leatherwood's argument on appeal requests this Court to review the "wealth of information" presented at the evidentiary hearing, and go one step further than Judge Coleman by peremptorily imposing a maximum sentence of life imprisonment on retrial. It is defendant's contention that the record on direct appeal in "Leatherwood I" did not contain sufficient information to allow for a meaningful proportionality review of Leatherwood's death sentence. See Leatherwood v. State, 435 So.2d 645 (Miss. 1983). Even though the circuit court has now set aside that death sentence, Leatherwood asks this Court to declare as a matter of law that the maximum sentence he may receive on re-trial is life imprisonment, this because the now complete record shows that a death sentence would be "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." See Miss. Code Ann., § 99-19-105(3)(c) (Supp. 1988). This request is made regardless of whether we grant relief as to the guilt phase.
In "Leatherwood I," Justice Hawkins dissenting, expressed grave concern over the infliction of the death penalty on Michael Dale Leatherwood. 435 So.2d at 657-60. In that case, he advocated the use of our statutory authority per Section 99-19-105 *1389 to remand to the circuit court for a sentence to life imprisonment. Leatherwood now argues that we have the same inherent and statutory authority at this stage of the proceedings to do what Justice Hawkins earlier advocated.
However, our statutory duty to conduct a proportionality review, and our statutory authority to order life imprisonment is triggered only "[w]henever the death penalty is imposed," and has become "final in the trial court." Miss. Code Ann., § 99-19-105(1) (Supp. 1988). Our duty to conduct a proportionality review arises only "[w]ith regard to the sentence," and our scope of review is "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases ..."[10] Section 99-19-105(3)(c). Also, our authority to affirm or set aside applies only "with regard to review of death sentences." Section 99-19-105(5).
Clearly, the statutory provision providing for the duty of review, and the companion authority of correction by this Court, contemplates that a death sentence have been "imposed" and become "final in the trial court." That was the case on direct appeal in "Leatherwood I." Here, however, there simply is no sentence to review because the trial court set aside Leatherwood's death sentence and ordered a new sentencing trial, and the State having not appealed, that decision is now final. Therefore, we have neither the statutory duty nor authority to peremptorily set the maximum sentence Leatherwood may receive if he is convicted on re-trial.
In addition to the absence of any statutory authority, accommodating Leatherwood's request would put this Court in the position of circuit court jury, a result both unprovided for and unwise under our system. Granted, there is now an abundance of information in the record concerning the defendant's character, his background, and his level of culpability that was not in the record on direct appeal. Furthermore, all the additional witnesses were subject to detail cross-examination by the State. It matters not, however, whether the record is now complete, for the new found "wealth of information" must first be presented to the circuit court jury. The circuit court jury sits as factfinder and sentencer, and it is that body, not this Court, which should make all of the credibility determinations that go along with the exercise of that duty. See Miss. Code Ann., §§ 99-19-101, 103 (Supp. 1988).
Leatherwood suggests that we did as much in Bullock v. State, 525 So.2d 764 (Miss. 1987). However, in Bullock there technically was a death sentence in place, and this Court performed the limited function of determining whether Bullock was subject to the death penalty as one who killed, attempted to kill, or intended that a killing take place or that lethal force be used. See Enmund v. Florida, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed.2d 1140, 1151 (1982). This Eighth Amendment function is one which is properly performed by the appellate court. Bullock, 525 So.2d at 767.
As noted by this Court, "the sentence currently in force may stand provided only that the requisite [Enmund] findings are made in an adequate proceeding before some appropriate tribunal  be it an appellate court, the trial judge, or a jury. A new hearing devoted to the identification and weighing of aggravating and mitigating factors is ... unnecessary." Id. (Emphasis added). This Court then proceeded to make those findings, noting that an affirmative finding would allow for re-imposition of the death penalty and re-setting of execution. Id. at 768.
Ultimately, the court exercised its statutory and inherent authority to "review and modify any sentence imposed in a criminal *1390 case," and commuted Bullock's death sentence to life imprisonment. Id. at 770. This is permissible because the court had before it a death sentence which had been merely stayed to await a determination of whether or not at least one of the Enmund requisites was met. And even though Enmund was satisfied, enough of the court agreed nonetheless to commute the sentence to life imprisonment. Accord, Edwards v. State, 441 So.2d 84, 92-94 (Miss. 1983).
Consequently, the exercise of our statutory duty of review is more appropriately reserved until such time as a proper sentence issues from the circuit court jury and becomes final in the trial court. A peremptory determination of the proportionality of a death sentence in a given case would invade the "absolute primacy... of the jury in making the factual determinations requisite to imposition of the penalty of death." Bullock, 525 So.2d at 774 (Robertson, J., Concurring in Part, Dissenting in Part). Furthermore, "we lack the practical capacity to do a very good job of factfinding," and "in the context of considering whether we would substitute our view for that of a jury on a question of fact, we have recognized repeatedly that the chances of error in any findings we might make would be infinitely greater than in the case where those findings have been made by twelve citizens, peers of the defendant, who have smelled the smoke of battle." Id. at 775. If on re-trial, the jury imposes the death penalty, the defendant can then appeal that decision, and we can properly review the proportionality of the sentence at that time. In this posture, there is no issue of proportionality properly before the court, and Leatherwood's argument under this issue has no merit.
Based on the foregoing, the order of the circuit court is reversed as to the guilt phase, and affirmed as to the sentencing phase, without prejudice. The case is then remanded as to both guilt and sentence for such proceedings as the State deems appropriate, consistent with the opinion in this case.
REVERSED AS TO THE GUILT PHASE; AFFIRMED AS TO THE SENTENCING PHASE WITHOUT PREJUDICE. REMANDED AS TO BOTH GUILT AND SENTENCE TO THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI.
HAWKINS, P.J., and PRATHER, ROBERTSON, ANDERSON and ZUCCARO, JJ., concur as to the guilt phase.
ROY NOBLE LEE, C.J., and DAN M. LEE, P.JJ., dissent as to guilt phase.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON and ZUCCARO, JJ., concur as to sentencing phase.
PITTMAN, J., not participating.
NOTES
[1] See Leatherwood v. State, 435 So.2d 645 (Miss. 1983) (Leatherwood I).
[2] See Leatherwood v. State, 473 So.2d 964 (Miss. 1985) (Leatherwood II), (Only the ineffective assistance claim was considered by the court, the others being res judicata, or otherwise procedurally barred).
[3] Michael Dale Leatherwood is represented here by different counsel.
[4] Per Miss. Code Ann., § 99-39-23(7) (Supp. 1988), Leatherwood's burden is to prove his right to relief by a preponderance of the evidence.
[5] It is not significant that the court spoke in the present tense. It is presumed that this Court followed its own admonition and "assessed" counsel's advice "from its inception." 473 So.2d at 969. Therefore, "[t]his ... is not the law," nor was it the law when counsel advised Leatherwood to plead guilty.
[6] While we do not and must not judge counsel's advice in light of post-Coleman cases since they were not available to counsel, subsequent decisions from this Court nonetheless demonstrate the only reasonable interpretation of Coleman. See Smith v. State, 419 So.2d 563, 567 (Miss. 1982) ("allowing photographic slides" showing the nature of the wounds inflicted upon the victim "to be projected upon a screen during the State's closing argument in the sentencing phase" as probative on the issue of whether the offense was "especially heinous, atrocious or cruel," relying on Coleman); Evans v. State, 422 So.2d 737, 743 (Miss. 1982) (jury can consider evidence of mental torture and aggravation of victim presented via nine color photographs showing the body of victim at scene of crime); Gilliard v. State, 428 So.2d 576, 581 (Miss. 1983) (on a plea of guilty, state allowed per Coleman to introduce during sentencing phase four photographs showing physical evidence such as a spent shotgun shell on the floor, the open cash register, the deceased's arm and the wadding from the shotgun shell lying near his hand, and the body lying on the floor near a chair, as relevant to establishing the aggravated circumstances of capital murder committed while engaged in the commission of robbery, capital murder committed for pecuniary gain, and capital murder committed in an especially heinous, atrocious, or cruel manner). Incidentally, these same three aggravating circumstances were used against Leatherwood; Leatherwood v. State, 435 So.2d 645, 655 (Miss. 1983) (re-affirming obvious import of Coleman that evidence in question was relevant to whether the crime was "especially heinous, atrocious or cruel" and whether the murder was committed during the course of an armed robbery); Booker v. State, 449 So.2d 209, 216-17 (Miss. 1984) (five photographs depicting the crime scene, and two photographs which graphically showed the condition of the victim after he was shot, admitted during the sentencing phase following a plea of guilty as having probative value on the question of whether the killing was heinous, atrocious or cruel, expressly following Coleman); Pinkney v. State, 538 So.2d 329 (Miss. 1988) (can show that the defendant used a method of killing which caused serious mutilation, dismemberment, physical and mental pain before death, or a lingering death, in order to establish that the murder was committed in an especially heinous, atrocious or cruel manner).
[7] The other three were that the capital murder was committed during the commission of a robbery, the capital murder was committed for pecuniary gain, and the capital murder was committed for the purpose of avoiding lawful arrest.
[8] ... "assuming arguendo, that the effective assistance claims were properly preserved, we consider whether the claims have merit ..." Id. at 281. (Emphasis added).
[9] The State also relies on Evans v. Cabana, 821 F.2d 1065 (5th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 5, 97 L.Ed.2d 795 (1987). This is simply the federal aspect of Evans v. State, supra, and as previously noted, Evans is distinguishable.
[10] See also, Section 99-19-105(3)(a), (b)  "Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101;"