806 So.2d 1170 (2002)
Daven ROBINSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2001-CP-00242-COA.
Court of Appeals of Mississippi.
February 5, 2002.
*1171 Daven Robinson, Appellant, pro se.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
IRVING, J., for the Court:
¶ 1. This appeal arises from a dismissal of Daven Robinson's motion for post-conviction collateral relief filed in the Circuit Court of Pearl River County. Aggrieved, Robinson comes before this Court pro se asserting that his guilty plea was involuntary and that he received ineffective assistance of counsel. Because we find no reversible error, we affirm.

FACTS
¶ 2. Robinson was indicted on June 29, 1999, by a Pearl River County grand jury on a charge of burglary of a dwelling, later reduced to receiving stolen property. In 1997, Robinson was convicted of burglary of an automobile. He was sentenced to seven years in the Mississippi Department of Corrections with four years suspended and four years of supervised probation. Brenda Varnarda, a probation officer, filed a violation of probation against Robinson on March 24, 2000, on the burglary of automobile conviction. His probation was revoked April 4, 2000. On the same day, *1172 Robinson signed a "Petition to Enter Plea of Guilty."
¶ 3. The petition contains the following pertinent recitals, and by the affixation of his signature to the petition, Robinson represented and acknowledged each of them:
3. I wish to plead GUILTY to the Charge of receiving stolen property.
4. My lawyer has counseled and advised me on the nature of each charge; on any and all lesser included charges; and on all possible defenses that I might have in this case.
5. I understand that I may Plead "NOT GUILTY" to any offense charged against me and the Constitution guarantees me:
(b) The right to plead not guilty and have a jury of my peers decide the question of guilt or not guilty to the charge.
7. I know that if I plead "GUILTY" to this charge, the possible sentence is 0 year minimum to 5 years maximum, imprisonment, and/or a fine of $0 (Minimum) to $1,000.00 (Maximum) and assessments.
14. I OFFER MY PLEA OF "GUILTY FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING OF ALL THE MATTERS SET FORTH IN THE INDICTMENT AND IN THIS PETITION AND IN THE CERTIFICATE OF MY LAWYER WHICH FOLLOWS.
Following the various recitals in the petition is an affidavit executed by Robinson. In the affidavit, Robinson swore that he fully understood everything contained in the petition and that his plea of guilty was made of his own free will.
¶ 4. At the plea hearing Robinson was fully advised of his rights and the consequences of pleading guilty. Thereafter, the trial court determined that Robinson's plea was freely and voluntarily made; thereafter, the judge accepted the plea. The trial judge sentenced Robinson to a term of five years, with two years to be served in the custody of the Mississippi Department of Corrections and three years suspended. This sentence was to run consecutively with the sentence Robinson was then serving on the parole revocation. Additionally, Robinson was also ordered to pay a $25 fine to Hancock County Justice Court, to pay David Synder $600 in restitution, and to pay all court costs of the plea hearing.
¶ 5. On January 5, 2001, Robinson filed a motion for post-conviction collateral relief which set forth three allegations: (1) that his plea was involuntary, (2) that there was a conflict of interest between him and Howell, his court-appointed attorney, regarding Howell's representation, and (3) that if the conviction and sentence were set aside, Howell would be guilty of providing ineffective assistance of counsel. The voluntariness of the plea was attacked on two grounds: (a) Howell filed a motion to suppress Robinson's confession but never called the motion up for hearing, thereby leaving Robinson without a defense, and (b) Robinson repeatedly told Howell that he was not guilty of the crime of burglary of a dwelling and wanted to proceed to trial but that Howell used tactics to force him to plead guilty to a crime he did not commit. The conflict of interest was alleged to arise out of the fact that Howell had served as the judge in the preliminary hearing of an armed robbery charge against Robinson in 1996.
¶ 6. Robinson's PCR motion was summarily dismissed by the trial judge. From the dismissal of this motion, Robinson is now before us on appeal. Additional facts will be added as appropriate during the discussion of the issues.

*1173 ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 7. The standard for reviewing a denial of a motion for post-conviction relief is well established. This Court is only authorized to set aside a finding of the lower court when that decision is clearly erroneous. Meeks v. State, 781 So.2d 109(¶ 5) (Miss. 2001). In the event that questions of law are raised, the standard of review is de novo. Id.; Brown v. State, 731 So.2d 595(¶ 6) (Miss.1999).

1. Involuntariness of the Plea
¶ 8. Robinson argues that the trial court erred in accepting his guilty plea because Howell, his court-appointed attorney, used tactics to coerce him to plead guilty to a crime that he did not commit. Robinson alleges in his brief that Howell told him that even if he beat the burglary charge at trial, the judge could still order a lesser charge of receiving stolen property and that he should plead in his best interest to avoid the maximum penalty. "[W]here a plea of guilty is involuntary, any judgment of conviction entered thereon is subject to collateral attack." Sanders v. State, 440 So.2d 278, 283 (Miss.1983). A defendant may withdraw his guilty plea, if he proves by a preponderance of the evidence that his plea was made involuntarily. Schmitt v. State, 560 So.2d 148, 151 (Miss.1990) (citing Leatherwood v. State, 539 So.2d 1378, 1381 n. 4 (Miss.1989)). "A plea is deemed `voluntary and intelligent' only where the defendant is advised concerning the nature of the charge against him and the consequences of the plea." Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992) (citing Wilson v. State, 577 So.2d 394, 396-97 (Miss.1991)).
¶ 9. A review of the transcript of the plea hearing reveals that Robinson, on three occasions, voluntarily offered a plea of guilty to receiving stolen property. First, Assistant District Attorney Manya Creel read the indictment to Robinson, and Robinson entered a guilty plea. Later in the plea hearing, during the court's interrogation, Robinson again offered his plea of guilty, as revealed in the following colloquy:
BY THE COURT:
Q. Correct. So, Daven, where we are is that the State would bring the proof you've just heard. The neighbor or person who allegedly saw you under whatever circumstances they saw you, Deputy Campbell who will testify as Mr. Creel said he would, that you did give him consent. And then like I explained to you, the right not to testify, but also the right to testify. So you'd have every opportunity to tell the jury your story and it would be up to the jury to believe whatever they chose to or found the facts of the case to be. So that would be where we'd be if it went to trial. So understanding that and understanding you could receive the sentence I've explained to you on a burglary, you're telling me that you do choose to plead guilty to receiving stolen property?
A. Yes, sir.
In the third and final instance, during further proceedings in the plea hearing, Robinson, yet again, expressed his desire to plead guilty as reflected in this exchange:
Q. All right. Now, do you at this time again, state that you do plead guilty to receiving stolen property?
A. Yes, sir.
Q. Now, Daven, has this plea been entered by you again, freely and voluntarily?
A. Yes, sir.

*1174 Q. Has anything happened while we were in recess or any other time by way of anybody mistreating you, abusing you, coercing you, intimidating you, threatening you, making promises to you, doing anything to cause you to continue on with this guilty plea?
A. No, sir.
Q. It is your decision?
A. Yes, sir.
¶ 10. As we have shown, Robinson made an intelligent and voluntary decision to plead guilty, not once, but three times. Robinson's argument that his attorney used tactics to coerce him into pleading guilty is belied by the representations made in his plea petition as well as by his testimony at the plea hearing. Therefore, we find that the trial court committed no error in denying Robinson relief on this issue.

2. Ineffective Assistance of Counsel
¶ 11. As already observed, in the PCR motion, Robinson alleged that if his plea and conviction were set aside, his counsel would be guilty of providing ineffective assistance of counsel. Quite logically, based on Robinson's pleadings, there is really no issue to consider here since the allegation of ineffective assistance of counsel was contingent upon the plea and conviction being set aside by the trial court, a contingency that never materialized. Nevertheless, it would appear that the pro se Robinson was attempting to assert a claim of ineffective assistance of counsel which we will address.
¶ 12. Although Robinson discusses his counsel's actions in the context of rendering his plea involuntary, we have chosen to address them here during our discussion of the ineffective assistance of counsel claim. Essentially Howell claims that his counsel was ineffective because his counsel filed a motion to suppress and never called it up for hearing and because counsel allegedly failed to adequately inform him of the elements of the crime charged and any defenses which Robinson might have to the charged crime. Closely related to the claim that counsel was ineffective is the allegation that counsel had a conflict of interest which prevented counsel from giving a full measure of devotion to Robinson's defense. This lack of full commitment is alleged to stem from the fact that Howell, as a municipal judge, presided over a preliminary hearing in 1996 where Robinson was charged with armed robbery. There is no allegation that the armed robbery charge is in any way related to the charge involved in this appeal.
¶ 13. Robinson's ineffective assistance of counsel claim must pass the rigid test promulgated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Mississippi Supreme Court in Leatherwood v. State, 473 So.2d 964 (Miss.1985). In Strickland, the Supreme Court established a two-part test that must be met by a defendant claiming ineffective assistance of counsel. When a defendant asserts a claim based on ineffective assistance of counsel, he has the burden of proving that (1) his counsel's performance was deficient, and (2) the results of the trial would have been different, but for the deficiency of counsel's performance. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. In order for Robinson to succeed under a claim of ineffective assistance of counsel, he must overcome the hurdle that his attorney's conduct is presumed "to fall within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052. Then this Court must view the conduct of the attorney in light of the totality of the circumstances to discover if errors made by the attorney were "outside the range of *1175 professionally competent assistance." Id. at 690, 104 S.Ct. 2052. Additionally, even if an attorney commits errors which are professionally unreasonable, a setting aside of the judgment is not necessarily warranted. Id. at 691, 104 S.Ct. 2052.
¶ 14. As stated, Robinson asserts that Howell failed to file proper motions and that the motion to suppress filed by Howell was never ruled on by the court. Robinson says that when he gave the confession, the law enforcement officer knew that he was under the influence of drugs. Apparently, Robinson believes that, because of this allegation, the motion to suppress the confession would have been sustained. We can never know whether the motion would have been sustained because it was not brought on for hearing. However, we can reasonably say that, in all probability, the law enforcement official who took the confession would have given a different version than Robinson's regarding the circumstances surrounding the giving of the confession. In any event, Robinson has shown us nothing which would lead us to believe the confession would have been suppressed. In this regard, we note that the matter of the motion to suppress was specifically discussed at the plea hearing. The trial judge explained to Robinson that he had a right to seek suppression of the confession. At that time, Robinson did not say anything even remotely resembling the allegation he later made in his PCR motion, that is, that he was under the influence of drugs when he gave the confession. On these facts, Robinson has not come close to proving that Howell was deficient in not filing motions or pressing for a ruling on the motion to suppress.
¶ 15. Furthermore, the transcript of the plea hearing again serves as an impenetrable fortress against Robinson's claim that he was left without a defense because his counsel failed to get a ruling on the motion to suppress the confession. The trial judge advised Robinson that Robinson had a right to seek suppression of the confession. Fortunately, that advice was memorialized in the pregnant transcript of the plea hearing which continues to deliver scathing blows to Robinson's onward and relentless assault against the integrity of his plea. On this point, the transcript reveals the following:
BY THE COURT: All right. Now, Mr. Howell could file a motion to suppress that. And if it was found that that consent was not freely and voluntarily, knowingly and intelligently given, then any evidence recovered as a result of that search couldn't be used.
MR. HOWELL: In fact, Your Honor, there was a motion to suppress filed. That particular motion has not been called up based on ourwhat we're doing here today.
BY THE COURT: Right. So in other words, Mr. Howell has informed me that there is such a motion already filed. So, you know, that motion will go by the wayside if you plead guilty. Do you understand that?
A. Yes, sir.
¶ 16. Robinson further argues that he was not informed by Howell of the elements of the crime. This claim is refuted by the "Certificate of Counsel" attached to the petition to enter plea of guilty. In paragraph four of the certificate, Robinson acknowledged that "[m]y lawyer has counseled and advised me on the nature of each charge." While this acknowledgment does not specifically say "element of the charge," it is a reasonable deduction that advice on the "nature of the charge" is advice regarding the "element of the charge." Additionally, the trial court questioned Robinson about the service his *1176 counsel had rendered. That discussion follows:
Q. Now, Daven, Mr. John Howell represents you in this matter. Has he met with you and conferred with you and discussed this case fully and completely with you?
A. Yes, sir.
Q. And has he in your opinion done everything as your attorney that he should have done to properly represent you?
A. Yes, sir.
Q. Anything he's done that you just feel like he should not have done?
A. No, sir
Q. Anything he hasn't done you think he ought to have done?
A. No, sir.
Q. So, are you completely satisfied with his services to you as your attorney?
A. Yes, sir.
¶ 17. Further, the trial judge clearly advised Robinson of the elements of the crime. During the plea hearing, Robinson initially claimed that he just woke up one morning and the stolen property was on his front porch. He claimed to have inquired of his neighbors if they knew where it came from, and no one could explain this unusual occurrence. After giving this testimony, the court questioned Robinson as follows:
BY THE COURT:
Q. Well, are you telling me then under oath that you did not actually receive stolen property, that you did not have any idea the property was stolen and didn't know where it came from?
A. Well, I knew that it wasn't mine. I knew that ityou know.
Q. Well, I mean you might have been putting it in safe keeping until you could find out who the owner was. I don't know. Daven, I mean if you're not guilty I don't want to accept your plea of guilty. We'll just go to trial on Monday on a burglary charge.
A. Well, Your Honor, I'm
Q. Let the jury decide the case. Now, if you know something about the stolen property.
A. I had a very good idea it was stolen property, Your Honor.
Q. Well, I imagine you did. You didn't think it was the tooth fairy left it out there. Do you know who left it out there? If you're trying to cover for somebody else, I'm not interested in who it is. I want to know factually you knew the property was stolen and you did take possession of it or not. If you didn't know it was stolen, you didn't take possession of it, I'm not going to accept your plea.
A. Well, Your Honor, I didn't know where it came from. I woke up and it was there. I mean I figured it was stolen.
Q. Still don't know where it came from?
A. No, sir.
Q. We'll let a jury decide this. How could he be charged with receiving something if he doesn't even know where it came from before he sold it.
MR. HOWELL: That's fine. And we'll call that motion up on Monday.
THE COURT: Might have time to do it tomorrow.
MR. HOWELL: Don't y'all have a jury coming in tomorrow?

*1177 THE COURT: Trial tomorrow, Thursday and Friday. We'll be here.
MR. HOWELL: That's fine.
THE COURT: Unless you want to confer with Daven, because I can't accept his plea. I mean you've got to knowingly and intentionally or have reasonable grounds to believe something was stolen.
MR. HOWELL: Sir?
THE COURT: I said he's either got to know the property was stolen or have reasonableI mean somebodytwo thousand dollar lawn mower, reasonable person would assume it was stolen property, but I mean without that, we don't have any element he actually received it.
MR. HOWELL: Do you want to come talk to me?
(DEFENDANT CONFERRING WITH MR. HOWELL)
THE COURT: Why don't we take ten minutes.
¶ 18. Clearly, the elements of the offense of receiving stolen property were explained in the colloquy set forth above. After the recess, Robinson reaffirmed his plea of guilty to receiving stolen property. Therefore, we find his claim that his lawyer did not explain the elements of the offense to him provides no basis for undoing his guilty plea.
¶ 19. Lastly, as already observed, Robinson argues that a conflict of interest existed between him and Howell because in 1996, Howell, then serving as a municipal judge, presided over an unrelated case where Robinson was the defendant. Robinson contends that this should have prevented Howell from representing him on the receiving stolen property charge. We agree with the trial court in its finding that the Mississippi Rules of Professional Conduct do not prevent a lawyer, who sits as a judge in a separate matter involving a defendant, from representing the defendant in an entirely unrelated matter. Furthermore, Robinson cites no facts to support his contention that his lawyer harbored some negative feelings from the prior case which somehow impacted upon his lawyer's willingness and commitment to aggressively defend him on the receiving stolen property charge. Additionally, Robinson cites no legal authority to support his contention that he suffered prejudice per se as result of the past relationship with his lawyer. The general rule is that failure of a party to cite to authority in support of an argument advanced is treated as a procedural bar, and this Court is under no obligation to address the issue. McClain v. State, 625 So.2d 774, 781 (Miss.1993).
¶ 20. The contentions advanced by Robinson that he received ineffective assistance of counsel are not sufficient to prove that Howell's performance was deficient and that Robinson's case was prejudiced in any way by any deficiency on the part of Howell. Therefore, we find that the trial court did not err in refusing to grant any relief to Robinson, and the trial judge's summary dismissal of Robinson's motion was entirely appropriate.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY DISMISSING APPELLANT'S MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS ARE ASSESSED TO PEARL RIVER COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.