WESTBROOKS, J.,
DISSENTING:
¶ 17. I am of the opinion that the trial court erred in denying Walton’s request for postconviction relief, and that Walton’s conviction represents a miscarriage of justice. Therefore, I respectfully dissent.
¶ 18. At the evidentiary hearing, I find that Walton showed that his attorney’s insufficiency had a reasonable probability of affecting the outcome of the case. “The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial [or plea] cannot be relied on as having produced a just result.” Jordan v. State, 918 So.2d 636, 647 (¶ 19) (Miss. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “A defendant must demonstrate that his attorney’s actions were deficient and that the deficiency prejudiced the defense of the case.” Id.
¶ 19. Initially, the public defender, Williams, denied receiving the “supplemental State’s report of discovery,” which stated that neither codefendants Matthews nor McKnight inculpated Walton in their statements. In fact, they named other accomplices in their statements to investigators. Williams asserted that once he learned of the statements, he filed a motion to withdraw Walton’s guilty plea. However, Williams acknowledged tjiat he did not further investigate after speaking with Matthews and his attorney, despite Matthews telling him that Walton was not involved in the crimes. However, at the evidentiary hearing, Williams claimed that he informed Walton of certain information obtained from Matthews and Matthews’s attorney. Williams asserted that Walton still decided to enter a plea of guilty to all four counts. However, I find this assertion highly questionable and doubtful.
¶ 20. Furthermore, Williams had an obligation to further investigate the exculpatory information once he learned of its existence. “[Trial] counsel has, at a minimum, ‘a duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case.’” Quitman Cty. v. State, 910 So.2d 1032, 1038 (¶ 14) (Miss. 2005) (quoting State v. Tokman, 564 So.2d 1339, 1342 (Miss. 1990)). Williams testified that if Matthews’s and McKnight’s statements had been disclosed to him, he would not have advised Walton to enter a guilty plea. The record does not reflect that Williams spoke to McKnight or his attorney regarding a statement that could have possibly exculpated Walton.
¶ 21. After review of the record, it appears that the communication between Walton and Williams was murky at best. I am of the opinion that Walton would have likely gone to trial to let a jury of his peers determine his guilt or innocence. He would not have entered a guilty plea without his attorney’s insistence, and he would not have been sentenced to fifty-one years in the custody of the MDOC.
¶ 22. While this Court cannot determine the outcome of a jury trial, we can deduce *914 that Walton would not have pleaded guilty to all four counts had he known of the existence of exculpatory evidence. As the majority states: “In the context of a guilty plea, Walton musj: first establish [a reasonable probability] that, but for his lawyer’s failure to advise him of the exculpatory statements of Matthews and MeKnight, he would have elected to go to trial and the outcome would have been different.” Maj. Op. at (¶ 13). The Mississippi Supreme Court has held “that a reasonable probar bility arises when the ineffectiveness is of such sufficient moment that the integrity of the proceeding or our confidence in the outcome has been shaken.” Hannah v. State, 943 So.2d 20, 24 (¶ 7) (Miss. 2006) (citing Leatherwood v. State, 539 So.2d 1378, 1385 (Miss. 1989)).
¶ 23. I would find that the trial court’s decision was clearly erroneous, and I would reverse the dismissal of Walton’s PCR motion.
IRVING, P. J., JOINS THIS OPINION.