473 So.2d 964 (1985)
Michael Dale LEATHERWOOD
v.
STATE of Mississippi.
No. 53914.
Supreme Court of Mississippi.
July 31, 1985.
*966 Michael Sandler, Michael Miller, Felice Busto, Washington, D.C., Samuel Walters, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by William S. Boyd, III and Marvin L. White, Jr., Spec. Asst. Attys. Gen., Jackson, for appellee.
En Banc.
WALKER, Presiding Justice, for the Court:

ON MOTION TO VACATE, OR TO SET ASIDE JUDGMENT AND SENTENCE
Michael Dale Leatherwood, pursuant to the "Mississippi Uniform Post-Conviction Collateral Relief Act", Mississippi Code Annotated section 99-39-1 et seq., has filed in this Court a motion to vacate his conviction[1] for capital murder and the sentence of death now pending against him.
This Court has previously considered the conviction and sentence in Leatherwood v. State, 435 So.2d 645 (Miss. 1983), and affirmed the decision of the trial court. As noted by Leatherwood in his motion to vacate, the majority of his present claims were raised on direct appeal, not appealed, or not raised at the trial level. These claims are procedurally barred or res adjudicata and not subject to further review by this Court. Only Leatherwood's claim of ineffective assistance of counsel remains to be considered by this Court.
Leatherwood contends he was deprived of his right under the Sixth and Fourteenth Amendments to the United States Constitution to effective assistance of counsel; that his counsel failed to investigate the law or supporting facts minimally necessary to represent him at trial and sentencing; and *967 that his defense counsel ignored or failed to investigate potential defenses and then undertook no meaningful preparation for the sentencing phase.
Leatherwood specifically states several claims as to his defense counsel's ineffectiveness. These specific claims will be discussed in the order presented.

I.
Leatherwood contends that if his defense counsel had investigated he would have uncovered at least fifteen substantial witnesses who could and would have provided favorable character evidence concerning Leatherwood. Leatherwood provided affidavits from these potential witnesses. The substance of these statements was that Leatherwood (1) was an excellent student with above average grades; (2) had a good reputation in school and was involved in high school activities; (3) was a reliable honest and conscientious employee who worked diligently at his after-school job; (4) participated in church and youth activities; (5) was never involved in any trouble in or out of school except for traffic tickets; (6) had a strong desire for approval and was easily influenced; and (7) was not viewed as violent or temperamental or as the type who would inflict harm. According to Leatherwood, these mitigation witnesses all live in Leatherwood's hometown of DeRidder, Louisiana and were willing to testify and could have been easily located by defense counsel.
Leatherwood contends that his counsel made no effort to explain to him or his parents the importance of having character witnesses at the sentencing hearing and his counsel's advice to plead guilty made Leatherwood's life dependent on the evidence presented at the sentencing trial.
Leatherwood also contends that his counsel made no effort to obtain his school, medical, or army records despite the fact that he had been in high school just five months prior to the killing and that the record would have been useful in mitigation against the death penalty.

II.
Leatherwood's second claim is that defense counsel failed to investigate and present available psychological evidence.
During the sentencing trial it was apparent that defense counsel sought to demonstrate that Leatherwood was an inherently good person who had fallen under the domination of George David Tokman. Yet, Leatherwood contends, psychological evidence relevant to his chosen defense had been developed in Leatherwood's trial in Louisiana but his counsel made no effort to use this evidence or any other evidence to support this defense.
Leatherwood was tried in Louisiana for armed robbery and underwent a psychological evaluation performed by Dr. David Post, a clinical psychologist in DeRidder, Louisiana. Leatherwood contends that his Mississippi counsel knew of this evaluation and generally about the results of the evaluation through conversations with Leatherwood's parents. Leatherwood's Louisiana counsel had also informed defense counsel of Dr. Post and the substance of his testimony in the Louisiana court cases.
The psychological profile for Leatherwood was as follows: He was emotionally immature and dependent on the acceptance of others. Though intelligent, he could only succeed in a highly structured situation where goals are clearly defined. He is not creative enough to define his own goals and depends on others for direction. He is a follower who in stressful situations becomes overwhelmed and immobolized by emotional distress. His reaction to stress prevents him from using his intelligence to exhibit rational behavior in keeping with his usual standards and further exacerbates his tendency to follow others. Dr. Post found that the characteristics associated with antisocial and psychopathic personality types were not found in Leatherwood.

III.
Next Leatherwood contends that counsel erred by failing to consult an independent *968 pathologist concerning the circumstances of the victim's death. The purpose of such evidence or testimony would have been to support Leatherwood's version of the crime and discredit the testimony of Jerry Fuson, another participant in the crime. Fuson testified that Leatherwood, after putting the rope around the victim's neck, jerked him from the driver's seat into the backseat. Leatherwood testified that the driver climbed into the backseat. Leatherwood contends that the pathologist would demonstrate that he did not apply such excessive force to the victim that would have caused his death.

IV.
Leatherwood next argues that his guilty plea was induced by his counsel's ineffectiveness and was constitutionally invalid for the reasons which follow.
Counsel was retained in the fall of 1980. According to Leatherwood's argument, counsel's strategy was to seek a plea bargain arrangement. The first in-depth interview of Leatherwood was conducted less than one month before trial by a new associate in counsel's firm who was fresh out of law school. Less than three weeks before trial counsel told Leatherwood's parents that plea bargaining efforts had failed.
Leatherwood contends that by relying on a false hope that a plea bargain would materialize counsel failed to undertake the factual investigation and legal research necessary to defend the capital murder charges or to investigate mitigation evidence for the sentencing hearing.
It is Leatherwood's contention that his defense counsel erroneously advised him to plead guilty due to a failure to research the law. According to Leatherwood, counsel advised him that if he pled guilty the state would be limited in the evidence it could present concerning the details of the murder during the sentencing phase. This, of course, is not the law. A plea of guilty does not restrict the state from offering evidence of the details of the commission of the crime that would have otherwise been admissible during the guilt phase.

V.
The legal test as to effective assistance of counsel was recently established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), where the United States Supreme Court held that on a claim of ineffective assistance of counsel the benchmark is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at ___, 104 S.Ct. at 2064, 80 L.Ed.2d at 692-93. This is because counsel plays a critical role in assuring that the adversarial system does produce a just result.
The burden of proving ineffective assistance of counsel is on the defendant to show that the counsel's performance was (1) deficient, and that (2) the deficient performance prejudiced the defense. If the defendant fails to prove either component then reversal of a conviction or sentence is not warranted. 466 U.S. at ___, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
The defendant is required to specify the acts or omissions that are alleged to be the result of unreasonable legal assistance.
In assessing whether or not a defendant received a fair trial or whether a fair trial was undermined by counsel's errors: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." 466 U.S. at ___, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
In assessing whether counsel's performance was deficient the standard of performance is that of "reasonably effective assistance." 466 U.S. at ___, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This continues to be reasonableness under prevailing professional norms and reasonableness considering all the circumstances.
*969 There is a strong presumption that counsel's conduct is within the wide range of reasonable professional conduct. There are however certain basic duties required of an attorney when representing a criminal defendant. These duties include the following: to assist the defendant, to advocate the defendant's cause, to consult the defendant on important decisions and to keep the defendant informed of important developments. However, there is no exhaustive list and no set of detailed rules which can take into account all the circumstances counsel faces or all the legitimate decisions on how to represent a defendant. There is no single, particular way to defend a client or to provide effective assistance.
To fairly assess the attorney performance "every effort [must] be made to eliminate the distorting effects of hindsight." 466 U.S. at ___, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. A particular strategy must be assessed from its inception as to its unreasonableness rather than from its ultimate success or lack thereof.
The totality of the evidence before the judge or jury should be considered in assessing whether there was prejudice, not just the factual findings which are affected by error.
Along with the presumption that counsel's conduct is within the wide range of reasonable conduct, there is a presumption that decisions made are strategic. Murray v. Maggio, 736 F.2d 279, 292 (5th Cir.1984). Courts are also reluctant to infer from silence an absence of strategy. Stanley v. Zant, 697 F.2d 955 (11th Cir.1983).
In Strickland v. Washington, 466 U.S. at ___, 104 S.Ct. at 2066, 80 L.Ed.2d at 695, the Court stated:
As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decision. See United States v. Decoster, 624 F.2d [196] at 209-210 [(D.C. Cir.1979)].
Some specific comments on Leatherwood's specific allegations are called for.
(1) An attorney may, of course, call less than all the character witnesses in mitigation. See Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983). There are many valid reasons for not calling witnesses: their testimony as a whole may be more harmful than helpful, their testimony may be impeached, their testimony may be cumulative,[2] *970 the witnesses may be unwilling or uncooperative; witnesses may be beyond the jurisdiction of the court or it may be beyond the financial ability of the defendant to provide for the witnesses' appearance.
Leatherwood has provided us with affidavits from many apparently willing and accessible witnesses who could have testified. Although, complaints of uncalled witnesses are not favored because presentation of testimony is a matter of trial strategy, Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir.1981), the failure to call available witnesses on critical issues is a factor to be considered under the totality of the circumstances.
At Leatherwood's trial defense counsel presented four witnesses: Leatherwood's father and mother, his military commander, and his pastor. Leatherwood alleges that defense counsel did not subpoena the latter two witnesses but that they came to the trial voluntarily and unexpectedly. Leatherwood further alleges that these witnesses were not interviewed by defense counsel prior to their taking the witness stand.
In view of the importance of mitigating evidence in the sentencing phase it is difficult to understand why favorable, willing witnesses who could be discovered by questioning the defendant would not be called. If it it were within the financial ability of the defendant to arrange for the appearance of a representative group of them, this would have a strong bearing on whether trial counsel provided effective assistance. Of course, counsel's overall performance must be considered.
(2) The failure to investigate and present psychological evidence must be assessed along the same lines as other mitigation evidence and witnesses. Given defense counsel's chosen line of defense that Leatherwood was under the domination of Tokman, unless there are facts not known to this Court, it would seem unreasonable for defense counsel not to pursue evidence in support of this defense.
Defense counsel may make a strategic choice as to which defense to pursue and how to pursue it, and the courts are not at liberty to question the decision-making process; yet, it is another matter when counsel chooses a defense and then does not follow through on his chosen strategy.
The lower court should determine whether defense counsel knew of available psychological evidence and rejected it or whether defense counsel sought an alternative to such evidence.
(3) Leatherwood's argument that counsel should have consulted an independent pathologist on the circumstances of the victim's death is weakened by the previous argument that the thrust of the defense was to be based on the grounds that Leatherwood was acting under the domination of Tokman. If defense counsel made his decision to follow one defense, it would be unnecessary to develop multi-defenses or to pursue every possible defense without question as to its merit or likelihood of success.
(4) Leatherwood's fourth alleged error of counsel is the failure to perform sufficient research prior to sentencing. In this regard, we simply note that there is no requirement that a lawyer's advice be perfect but it must be reasonably competent and must show more than brief preparation. Herring v. Estelle, 491 F.2d 125, 128 (5th Cir.1974).
There is much we do not know. We have been presented only one side of the argument. The lower court should, on remand, thoroughly develop testimony as to defense counsel's actions prior to the trial of Leatherwood. It is for the lower court to determine whether Leatherwood's factual allegations are true and the weight to be given them under Strickland.
The more difficult hurdle is a showing of prejudice. Not every error by *971 counsel warrants the setting aside the judgment of a criminal proceeding if there is no probable effect on the judgment. 80 L.Ed.2d at 696. Petitioner must make an affirmative showing of prejudice. While reserving this decision to the trial court, we would be remiss not to point out the uniqueness of a capital murder sentencing trial. As noted in Strickland, a capital sentencing proceeding is sufficiently like a trial in its adversarial format to be "comparable to the counsel's role at trial  to ensure that the adversarial testing process works to produce a just result under the standards governing decision." 80 L.Ed.2d at 693.
Ineffectiveness is judged on the facts of each case. Defense counsel's general reputation and experience may be a relevant consideration, but they do not preclude a finding that in a particular case his performance fell below the level of effective assistance. It is counsel's specific performance in this case which is being assessed, not his overall career. The purpose of the hearing is to determine whether the guarantees to the right to counsel under the Sixth Amendment to the Constitution have been denied to the petitioner and are not to be seen as an attempt to chastise or vindicate counsel for his performance.
We are of the opinion that Leatherwood has raised sufficient allegations to call into question the effectiveness of his counsel prior to his plea of guilty and during the sentencing phase of his trial. For this reason we remand Leatherwood's Motion to Vacate, or to Set Aside Judgment and Sentence to the Circuit Court of the First Judicial District of Hinds County for the purpose of conducting a hearing and making a finding of fact and conclusions of law as to whether Michael Dale Leatherwood received effective assistance of counsel prior to his plea of guilty and at the sentencing phase of his trial on the charge of capital murder under the guidelines of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
If the lower court finds that Leatherwood received ineffective assistance of counsel prior to entering a plea of guilty in this case, the court should, at the earliest practical date, set a date for retrial of Leatherwood, subject of course to the right of the State to appeal that decision. If the lower court finds that Leatherwood received ineffective assistance of counsel during the sentencing phase of the trial only, the court should set a date for a new trial for sentencing of Leatherwood, subject to the State's right to appeal that decision. If the court finds that Leatherwood received effective assistance of counsel in both phases of his trial, then the court should certify that finding to this Court. That finding would be subject, of course, to the right of Leatherwood to appeal that finding to this Court for appropriate review.
MOTION TO VACATE, OR TO SET ASIDE JUDGMENT AND SENTENCE REMANDED TO THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY WITH DIRECTIONS.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Leatherwood entered a plea of guilty to the charge of capital murder.
[2] PARENTS AND RELATIVES should, of course, be called. However, we recognize that such witnesses, because of the relationship may not be as effective as another who could also testify to the same matters.