Mack Arthur King petitioned the Circuit Court of Lowndes County for writ of error coram nobis. From that court's denial of his petition, King appeals. Because we find no error, we affirm.
 FACTS
In December of 1980, King was convicted of the murder of Mrs. Lelia Patterson and sentenced to death. This Court affirmed that conviction and sentence. King v. State, 421 So.2d 1009 (Miss. 1982), cert. denied 461 U.S. 919, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983). Subsequently King petitioned this Court for leave to file in the circuit court a petition for writ of error coram nobis. This Court denied that petition without prejudice, holding that certain grounds were barred as res judicata, and others were procedurally barred by King's failure to raise them at trial or on appeal. The only ground not so barred was King's claim that he was denied his right to effective assistance of counsel. This claim was dismissed without prejudice for failure to comply with court rule. King v. Thigpen, 441 So.2d 1365 (Miss. 1983).
King then filed a second application for leave to petition the circuit court for writ of error coram nobis. This Court ordered an evidentiary hearing for the purpose of determining whether King was denied effective assistance of counsel at the sentencing phase of his capital murder trial. King v. Thigpen,446 So.2d 600 (Miss. 1984). After a two-day evidentiary hearing, the circuit court found (1) that King was afforded *Page 273 
effective assistance of counsel at the sentencing phase of his trial, (2) that the decisions of King's attorney were sound, and (3) that in any event there was no reasonable probability that any omitted evidence would have changed the jury conclusion that the aggravating circumstances outweighed the mitigating circumstances. From that decision King appeals, claiming that trial counsel's failure to investigate and prepare a defense for the sentencing phase of trial deprived King of his constitutional right to counsel.
 LAW
Our analysis of the ineffectiveness claim begins with the fundamental concepts (1) that King had a right to counsel, United States Constitution Amendment VI, Gideon v. Wainwright,372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), (2) that his right to counsel encompassed the right to reasonably effective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (3) that the right to effective assistance of counsel attached at both the guilt phase and sentencing phase of his trial, Strickland, 466 U.S. at 668, 104 S.Ct. at 2052. Having established that framework, we next must determine whether King was afforded effective assistance of counsel at the sentencing phase. King must establish two elements in order to prevail on this claim. First, he must show that his attorney's representation was so deficient that he was not performing as counsel guaranteed by the Sixth Amendment. Second, he must prove that prejudice resulted from the deficiency,i.e., that counsel's errors were so serious as to deprive him of a fair trial. Strickland, 466 U.S. at 668, 104 S.Ct. at 2052; Leatherwood v. State, 473 So.2d 964 (Miss. 1985). In applying this standard to the facts in the case at bar, we are mindful of the strong presumption that counsel rendered adequate assistance. Strickland, 466 U.S. at 668, 104 S.Ct. at 2052;Leatherwood, 473 So.2d at 964. Further, we are aware that our task is to evaluate counsel's actions from his perspective at the time he took those actions. Id.
 I. HAS KING ESTABLISHED A SERIOUS DEFICIENCY IN TRIAL COUNSEL'S PERFORMANCE?
The thrust of King's argument is that trial counsel, in effect, did not put on a defense at the sentencing phase of the trial. We disagree. The record indicates that counsel's strategy at the sentencing phase was to emphasize King's youth. (King was twenty (20) or twenty-one (21) years old at the time of the trial.) Further, the record indicates the tactics counsel used to implement this strategy: rather than having King testify and thus subjecting him to cross-examination, trial counsel chose to have King make an unsworn statement to the jury by presenting a part of the final argument. According to trial counsel's advice, King was to emphasize his youth and ask the jury to spare his life. He did. He also, however, began protesting his innocence, a claim trial counsel had strongly urged him not to make. At the evidentiary hearing, trial counsel testified to his belief that this claim of innocence alienated the jury, which had just found King guilty.
In addition to King's unsworn statement, trial counsel also presented argument at the sentencing phase. He pointed out that the jury could consider King's age, his background, and the circumstantial nature of the evidence in mitigation against the death penalty. King cites Voyles v. Watkins, 489 F. Supp. 901
(N.D.Miss. 1980) in support of his claim that counsel virtually put on no defense at the sentencing phase. We note the numerous points at which Voyles is distinguishable from the case at bar. In Voyles, although a more experienced attorney assisted voluntarily, the counsel having primary responsibility for the defense had never before tried a murder case. Trial counsel in the case at bar had tried numerous capital murder cases, although he could not recall an exact figure. Also, in Voyles, trial counsel was aware that the success of the defense was dependent on persuading the jury to believe the defendant's version of the events, rather than the version given by the chief prosecution witness; moreover, trial counsel *Page 274 
failed to investigate a likely basis for impeaching that key prosecution witness. King did not testify in his own defense, and the record indicates no basis for attempted impeachment of prosecution witnesses. Counsel in Voyles also failed to request an instruction that testimony of an alleged accomplice should be viewed with caution. Finally, in Voyles, there was "an array of witnesses who were in position to testify that petitioner had a stable employment record, and that he was known to be a hardworking, dependable person with a mild and non-violent disposition," and it was counsel's failure to call these witnesses that, along with other factors, rendered his assistance ineffective. Voyles, 489 F. Supp. at 909. At the evidentiary hearing in the case at bar, two family members appeared on behalf of King and stated that they would have testified to mitigating background information at trial had they been called on to do so. King's trial counsel testified at the evidentiary hearing that he chose not to call character witnesses, because doing so would "open the door" for the prosecution to attack King's character. Again we note that in Voyles the importance of calling character witnesses was intensified by the fact that the heart of the defense was the attempt to persuade the jury to believe the defendant and not believe the chief prosecution witness.
This issue of character witnesses is the focus of King's next argument: he claims that his counsel was ineffective by virtue of failure to find character witnesses and have them testify at the sentencing phase of trial. This argument exemplifies precisely the type of second-guessing condemned in Strickland andLeatherwood. The record of the evidentiary hearing reveals that trial counsel made a strategic choice not to call character witnesses. He testified his reluctance to offer evidence of King's character was due to the evidence the prosecution would thereby be allowed to put on, specifically evidence of King's prior convictions, his poor employment history, and his living with a woman without benefit of marriage. Because this decision was one of strategy, well within the range of constitutionally competent representation, we agree with the circuit court that the failure to call mitigating character witnesses did not constitute ineffective assistance of counsel, particularly in light of this Court's holding that there are many valid reasons for not calling witnesses. Leatherwood, 473 So.2d at 969. Seealso Mitchell v. Kemp, 762 F.2d 886 (11th Cir. 1985) (no absolute duty to present mitigating background evidence).
Next we consider King's claim that trial counsel's failure to pursue evidence of King's intelligence level constituted ineffective assistance of counsel. At the evidentiary hearing King offered the testimony of a licensed psychologist, who stated that he had administered tests which indicated King's intelligence quotient (I.Q.) was 71. The psychologist testified that King's score placed him in the lower range of the category "borderline intellectual functioning." When asked whether this category could be included in the broader category termed "mentally retarded," the psychologist stated that it could. Although the testimony is conflicting, there is some indication in the record that thirty percent (30%) of Mississippi's population are at or below King's intellectual level. The psychologist also testified that King's scores were indicative of a tendency to be impulsive and difficulty in controlling instinctive responses.
The fatal flaw in King's argument is this: His attorneys did not know, at the time of trial, that his intelligence quotient (I.Q.) was seventy-one. Counsel's effectiveness is to be evaluated from the perspective which the attorney had at the time of the performance under scrutiny. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. See also Washington v. Watkins,655 F.2d 1346 (5th Cir. 1981) (determination of counsel's effectiveness must be based on facts known to counsel at time in question) andcert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 *Page 275 
L.Ed.2d 474 (1982); Leatherwood, 473 So.2d at 964 (distorting effects of hindsight should be eliminated). King's trial counsel did not consider he was significantly impaired.
Before trial and at defense counsel's request, the court ordered a mental examination, the report of which revealed that King was competent to stand trial and was responsible for his actions at the time of the crime; the report included no indication of intellectual level. Trial counsel cannot be charged with knowledge he did not have. King also argues that counsel should have investigated his intellectual level. It is true that once counsel has chosen, for instance, domination by another as a defense, it is unreasonable for him not to pursue evidence of his client's psychological condition, Leatherwood, 473 So.2d at 970; nevertheless, defense counsel may legitimately choose not to pursue a particular defense, id. Furthermore, in order to establish that failure to investigate a line of defense constituted ineffective assistance, a petitioner must show that knowledge of the uninvestigated evidence would have caused counsel to vary his course. Gray v. Lucas, 677 F.2d 1086 (5th Cir. 1982), cert. denied, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983). No such showing was made in this case.
Again King cites a federal case, and again the case is distinguishable from the facts presently before this Court. InJones v. Thigpen, 788 F.2d 1101 (5th Cir. 1986), three facts were established at the hearing on the habeas petition:
 1. The defendant was mentally retarded; specifically, his intelligence quotient (I.Q.) was forty-one.
 2. The defendant was seventeen years old at the time the crime was committed.
 3. The defendant was not proved to have had any role or intent in the homicide for which he had been sentenced to death.
Because Jones' trial counsel put on no proof of these factors, his performance as counsel was held to be inadequate. Mack Arthur King's intelligence quotient was not forty-one; it was seventy-one. His age, unlike Jones', was argued to the jury at the sentencing phase, both by trial counsel and by King himself. Not only did King participate in the homicide, he was, in fact, the sole agent of Lelia Patterson's death.
We conclude, therefore, that King has failed to establish that his counsel's performance was deficient.
 II. HAS KING ESTABLISHED PREJUDICE?
Assuming arguendo that there was inadequate representation, King has utterly failed to make any showing of prejudice, as is required by the second prong of the Strickland test. The circuit court, in denying King's petition found as follows:
 In any event the Court does not feel that alternative decisions would have had any effect on the outcome of this case. A young, strong man who admitted he was a burglar in the elderly woman's house, could have taken anything he wanted and left without doing physical harm to anyone. Instead he committed a brutal murder on the victim who was almost blind and nearly deaf. There is no reasonable probability that any omitted evidence or failure to make certain objections would have changed the jury conclusion that the aggravating circumstances outweighed the mitigating circumstances.
Lelia Patterson was eighty-four years old. She suffered a severe blow to the head. She was also manually strangled and drowned. When the autopsy was performed, bloody froth was still flowing freely from her mouth and nose. King v. State,421 So.2d 1009, 1016 (Miss. 1982). The pathologist who testified at trial was unable to say in what sequence the blow, the strangulation and the drowning occurred, but stated that it was possible that the order of events was such that she was conscious as she was being drowned. King committed the murder in the course of a burglary. In reweighing this evidence, we can find no reasonable probability that the jury at the sentencing phase, even with benefit of character witnesses and evidence *Page 276 
of arguably low intelligence, "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death," Evans v. State, 485 So.2d 276, 282 (Miss.),cert. denied, ___ U.S. ___, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986) (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir. 1985). The circuit court's denial of King's petition for writ of error coram nobis is affirmed.
AFFIRMED.
ROY NOBLE LEE and HAWKINS, P.JJ., DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, J., specially concurs.