THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A

# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00329-SCT

*CHRISTOPHER FARMER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/96 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LONNIE MARVIN VINING |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | CHERYL GRIFFIN |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 2/19/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/6/98 |

**BEFORE SULLIVAN, P.J., BANKS AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Christopher Farmer was indicted on May 10, 1995, in the Circuit Court of Leflore County for aggravated assault with a deadly weapon pursuant to Miss Code Ann. § 97-3-7. He petitioned the trial court on May 19, 1995, to enter a guilty plea on his behalf. The trial court accepted Farmer's guilty plea on May 30, 1995, and on June 12, 1995, he was sentenced to twenty years for his crime. Farmer filed a post-conviction relief motion based on his assertion that his guilty plea was not knowingly, intelligently and voluntarily entered. A hearing was held on February 15, 1996, where the trial court dismissed the motion to vacate the conviction and sentence by order, dated and filed April 12, 1996.

During the hearing on the motion, the court determined that, other than the assistance of counsel, none of the reasons given by Farmer had any merit. There seemed to be much dispute in the legal community as to the application of the Senate Bill No. 2175 to defendants who committed alleged

offenses before July 1, 1995 but would be convicted and sentenced after the effective date. A relevant part of the transcript on this point states:

BY THE COURT: Mr. Vining, the way I recall what was going on at the time, and Mr. Holly can correct me, several of the lawyers came to me and asked me my opinion and I told them my opinion was that the 85% law could not possibly attach to a person whose crime was committed before the effective date of the Act but to bring this to the attention of people and tell them they didn't know but that it was the Court's opinion that it did not -- would not apply;

Due to this uncertainty, the court at first believed that the present motion should be continued until the Supreme Court could determine this issue of law. Upon further conversation with Mr. Vining, Farmer's new attorney, the Judge decided to deny Farmer's petition where the unsettled application of the 85% rule to certain defendants could be properly addressed by the Supreme Court on appeal.

## DISCUSSION OF THE LAW

## I. JURISDICTION

The first issue this Court must address is whether it has jurisdiction to hear this appeal due to the fact that the appeal was prematurely filed. Rule 2(a)(1) of the Mississippi Rules of Appellate Procedure reads, "*Mandatory Dismissal.* An appeal shall be dismissed if the notice of appeal was not timely filed pursuant to Rules 4 or 5." Since this case does not involve an interlocutory appeal, Rule 5 is inapplicable to the analysis. Instead, this is an appeal from a dismissal under the Post-Conviction Relief Act; and it must satisfy "such terms and conditions as are provided for in criminal cases." Miss. Code Ann. § 99-39-25 (1) (1994). Therefore, Rule 4 (a) is the controlling rule, and the relevant part reads as follows:

> (a) **Appeal and Cross-Appeals in Civil and Criminal Cases.** In a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to the Supreme Court, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from....

Miss. R.App.P. 4(a).

This Court has explained that the 30 day limit in filing a notice of appeal is to be strictly enforced. *Tandy Electronics, Inc. v. Fletcher,* 554 So. 2d 308, 310-11 (Miss. 1989); *Kimbrough v. Barnwell,* 680 So. 2d 799, 801 (Miss. 1996). As previously stated by this Court, "Filing a notice is a simple act, and a party must do all it could reasonably be expected to do to perfect the appeal in a timely fashion" *Matter of Estate of Ware,* 573 So. 2d 773, 775 (Miss. 1990).

In the present case, the appellant prematurely filed his appeal before the order of dismissal was filed. It is clear from the record that the appellant believed he had followed the law when perfecting this appeal since he sought and was granted an out of time appeal on March 20, 1996, believing that he was past the thirty day time limit. The notice of appeal explained that petitioner's motion was denied on February 15, 1996, and it was this date that appellant's counsel erroneously believed started the thirty days to perfect the appeal. The lower court apparently found "excusable neglect" based on the illness of Counsel's mother, when it stated "it finds the Motion well argued." Appellant's counsel

asserted in his reply brief that he heard the judge say "ordered", and believed his draft of the order was merely memorializing the previous February 15, 1996 order. Nevertheless, the State argues this Court does not have jurisdiction because there was no subsequent notice of appeal after the trial court denied relief.

However, Rule 2(c) provides for the suspension of Rule 2(a)(1) in criminal cases, including the suspension of the time for taking an appeal. Rule 2(c) provides:

> (c) **Suspension of Rules.** In the interest of expediting decision, or for other good cause shown the Supreme Court or the Court of Appeals may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction; provided, however, in civil cases the time for taking an appeal as provided in Rules 4 or 5 may not be extended.

Miss.R.App.P. 2(c). The comment to Rule 4 explains the purpose of a suspension of the rules is to "prevent manifest injustice." This Court stated in *Benbow v. State,* that "Rules 2(c) and 4(g), [referring to out of time appeals] read in conjunction with Miss. Code Ann. 99-39-25(1) (Supp. 1991) provides this Court with authority to suspend the rule in post-conviction relief appeals, as in any other criminal appeal, and to allow an appeal to proceed despite apparently untimely notice." 614 So. 2d 398, 400 (Miss. 1993). Although the issue in *Benbow* was a late notice of appeal instead of a premature notice of appeal, we find that a suspension of the rules as authorized by Rule 2 (c) is proper in the case at bar to prevent manifest injustice.

## II. CAN SENATE BILL NO. 2175 BE APPLIED LITERALLY AS WRITTEN, ON THE DATE OF CONVICTION OR SENTENCING, ALTHOUGH THE OFFENSE WAS COMMITTED PRIOR TO ITS EFFECTIVE ENACTMENT? OR IS SUCH AN APPLICATION AN EX POST FACTO LAW?

This issue has been recently been decided and this Court held that the application of Senate Bill 2175 to defendants who committed offenses prior to the enactment of the statute was an ex post facto law and therefore, was unconstitutional. *Puckett v. Abels,* 684 So. 2d 671, 678 (Miss. 1996). Since the *Puckett* opinion thoroughly researched and analyzed the controlling law, it is unnecessary to repeat the same analysis and reasoning of the Court on this identical issue presented in the current appeal.

## III. IF A LAWYER ADVISES HIS CLIENT THAT SENATE BILL NO. 2175 WOULD APPLY TO AN OFFENSE COMMITTED EARLIER THAN ITS EFFECTIVE ENACTMENT, AND THE CLIENT RELIES UPON THIS ADVICE IN ENTERING A PLEA, HAS THE LAWYER RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE?

There can be no doubt that the right to counsel requires that counsel's assistance be effective. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). As stated by this Court, "[O]ne charged with an offense against the criminal laws of a state has a right to effective assistance of counsel in making his or her defense." *Read v. State,* 430 So. 2d 832, 837 (Miss. 1983). In making the determination if counsel's assistance has been effective, this Court, in 1984, adopted the two part test set out by the U. S. Supreme Court in *Strickland v. Washington* as controlling. *See Stringer v. State,* 454 So. 2d 468 (Miss. 1984).This standard is also applicable in the present appeal because this Court has

explained that challenges to guilty pleas, based on ineffective assistance of counsel, are to be evaluated under the same two-part test. *Coleman v. State,* 483 So. 2d 680, 683 (Miss. 1986); *Roland v. State,* 666 So. 2d 747, 750 (Miss. 1995). This Court reasoned:

> The application of the *Strickland* test in this context is wholly consistent with our justifiable concern over the "constitutional soundness" of guilty pleas, and our long standing test for determining that soundness, which is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."

*Leatherwood v. State,* 539 So. 2d 1378, 1381 (Miss. 1989) (citations omitted).

As explained by the U.S. Supreme Court, the purpose of the test is to give courts direction in determining if counsel's assistance in a particular case was sufficient to protect a defendant's Sixth Amendment right to counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, the defendant must show: 1.) that counsel's performance was deficient and 2.) that the deficient performance prejudiced the defense. *Id.* at 687. The defendant has the burden to satisfy both prongs of the test. *Cole v. State,* 666 So. 2d 767, 775 (Miss. 1995) (*citing Edwards v. State,* 615 So. 2d 590, 596 (Miss. 1993)). When a court is evaluating the defendant's proof, it must look at the "totality of the circumstances" in light of the rebuttable presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Considering the law, each part of the test must be evaluated based on the facts of this particular appeal.

## A. Deficient Performance

The challenged conduct in the present appeal is the advice given to Farmer by Mr. Holly, his appointed trial lawyer, telling him that Senate Bill 2175, referred to as the 85% law, would apply to him and therefore, he should plead guilty to prevent such mandatory time in the event he is proven to be guilty. In support of these facts, the record reveals three affidavits by Farmer's mother, father, and grandmother, and the order of dismissal in which Judge Gray Evans took judicial notice of these facts. Based on these facts, there is no dispute as to what Mr. Holly told Mr. Farmer prior to entering his guilty plea.

In order to determine if counsel's performance was deficient, the time when the challenged conduct occurred, as opposed to the benefit of hindsight, is controlling. *Strickland,* 466 U.S. at 690. As revealed in the record, the applicability of the 85% rule to defendants who committed offenses prior to the effective date of the new law but would be sentenced after the effective date was in much dispute. The question that must be answered in this appeal is if Farmer's guilty plea, based on the advice of Mr. Holly, was voluntary. In order to determine this, the Court must decide if Mr. Holly's conduct was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771 (1970).

The State asserts that Mr. Holly's performance was not deficient. In support of this the State cites to *Evans v. State* which states, "trial counsel's interpretation of existing law when the guilty plea was entered was not contrary to law and precedent at the time." 485 So. 2d 276, 282 (Miss. 1986). However, this language is not controlling because, in referring to this exact passage, this Court stated, "As this passage is dicta, it holds no precedential value, lacks the form of an adjudication, and

therefore, does not guide our decision *sub judice*." ***Leatherwood v. State***, 539 So. 2d 1378, 1384 (Miss. 1989).

As this Court has recognized in several cases, "mistaken advice of counsel may . . . vitiate a guilty plea." ***Coleman,*** 483 So. 2d at 682 (*citing **Tiller v. State,*** 440 So. 2d 1001, 1006 (Miss. 1983)). However, the United States Supreme Court stated, "It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts." ***McMann,*** 397 U.S. at 774. Stated differently, where a defendant chooses to take the benefit, if any, of a guilty plea, he accepts the inherent risk that good faith evaluations of a reasonably competent lawyer will turn out to be mistaken either as to the law or to what a court's judgment might be on a given law. The problem in the present appeal is that no one seemed to know for sure what "the law then existing" actually meant. The State argues that if this Court finds Mr. Holly's assistance to be legally ineffective then all judges and attorneys became ineffective from the moment the legislature passed Senate Bill 2175 and until it was definitely ruled on by the Mississippi Supreme Court. This reasoning is flawed. Had Mr. Holly merely informed Farmer that the 85% law was out there but he was uncertain if it would apply to him, then one could make an argument that this was competent advice which would allow the defendant to make a fully informed decision whether to plead guilty or not. But this is not what the record reveals that happened. Instead, Mr. Holly, as a matter of fact, told Farmer that the 85% law definitely would apply to him. This Court has stated, "The one person in the world, upon whose judgment and advice, skill and experience, loyalty and integrity that defendant must be able to rely, is his lawyer." ***Sanders v. State***, 440 So. 2d 278, 286 (Miss. 1983); ***Myers v. State***, 583 So. 2d 174, 178 (Miss. 1991).

In order for a guilty plea to be enforced, a defendant must be informed of all relevant facts and circumstances in order to make an voluntary, intelligent, informed decision. ***Vittitoe v. State,*** 556 So. 2d 1062, 1063 (Miss 1990); ***Myers v. State,*** 583 So. 2d 174 (Miss. 1991). Although Mr. Holly believed at the time the 85% law would apply, he was aware of the uncertainty of its application among other lawyers, legislators, and judges and he should have advised his client of this uncertainty. If he had done this, then his conduct would be considered "'within the range of competence demanded of attorneys in criminal cases.'" ***Coleman,*** 483 So. 2d at 682 (*quoting **Hill v. Lockhart,*** 474 U.S. 52 (1985).

Several cases have addressed the legal effect of counsel's mistaken advice during the plea process on the voluntariness of the defendant's subsequent plea. In ***Baker v. State***, the Court held:

> If, as alleged, appellants pleaded guilty under the mistaken advice that they could be subject to capital punishment if convicted at trial, this then, is a factor which may make appropriate a collateral attack . . . Such allegation, if true, indicates that defendants were not fully aware of the implications of their plea nor of the true consequences of a trial by jury. Such a circumstance, if properly pleaded and supported by sufficient facts, makes out a case where relief...may be appropriate.

358 So. 2d 401, 403 (Miss. 1978). *See also **Tiller v. State,*** 440 So.2d 1001, 1006 (Miss. 1983). Likewise, Farmer was given mistaken advice that if he went to trial and was found guilty he would have to serve a mandatory 85% of his sentence and therefore, he did not know of the true

consequences if he had gone to trial. Although the Court dismissed the appeal in **Baker** due to the fact that S. Ct. Rule 38 procedures were not followed, Farmer's complaint does meet the pleading requisites of the Post Conviction Relief Act. In **Tiller v. State,** we find a case that is similar to the case at bar. In **Tiller**, the parole laws affecting Tiller had been amended, but Tiller's counsel mistakenly advised him that the old, more liberal, parole laws would apply to him. The Court ruled that if Tiller could prove the plea was entered in reliance upon counsel's advice he was entitled to a new trial. **Tiller,** 440 So. 2d at 1006. The Court stated, "Should Tiller prove that which he has alleged . . . he could . . . receive. . . a vacation of his guilty plea and reinstatement of his not guilty plea." **Id.** at 1006. In **Tiller,** the Court remanded the case for an evidentiary hearing on the merits. In the present case, this hearing has already been conducted so there is no reason to have another one.

Another case that is factually similar to the case *sub judice* is **Coleman v. State,** 483 So. 2d 680 (Miss. 1986). In **Coleman**, the appellant asserted that his guilty plea to armed robbery was involuntary due his reliance on the advice his attorney gave him about his eligibility for earned good time and early release. **Id.** at 681. The attorney's advice was correct at the time it was given but later the Miss. Dept. Of Corrections changed its interpretation of the law, rendering the advice given to be incorrect. **Id.** at 682. In addressing this issue this Court distinguished the case from **Hill v. Lockhart,** 474 U.S. 52 (1985) and relied on the precedent of **Tiller v. State**. **Id.** at 681-82. The present appeal can also be distinguished from the **Hill** case in that Mr. Holly's firm advice about the applicability of the 85% rule, without expressing the known uncertainty of its application to his client, fell below an objective standard of reasonableness. Because the advice given to Farmer was not qualified by the uncertainty of the law and it was determined to be incorrect by this Court in **Puckett v. Abels**, 684 So. 2d 671 (Miss. 1996), we consider Mr. Holly's performance to be deficient, thus satisfying the first prong of the **Strickland v. Washington** test.

## B. Prejudice to Defendant

Now the inquiry must turn to whether Farmer was prejudiced by Mr. Holly's deficient performance. Farmer must prove both parts of the **Strickland v. Washington** test to warrant reversal of his motion to vacate his conviction and sentence. **Leatherwood v. State,** 473 So. 2d 964, 968 (Miss. 1985). This Court has limited the inquiry of prejudice to a prediction of the outcome of the plea process only, unless the deficient assistance at issue is either a failure to investigate or the failure to advise about an affirmative defense. **Leatherwood v. State,** 539 So. 2d 1378, 1386 (Miss. 1989). ". . . . [A] defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding* would have been different.'" **Id**. at 1387 (*quoting* **Strickland,** 466 U.S. at 694).

The test for determining if a guilty plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." **North Carolina v. Alford,** 400 U.S. 25, 31 (1970); **Boykin v. Alabama,** 395 U.S. 238, 242 (1969). Given this standard, if the primary reason Farmer pled guilty was because of the application of the 85% rule, his plea should be considered involuntary. "Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." **Boykin,** 395 U.S. at 242-43. As the State points out, the correct standard espoused by **Hill** in determining prejudice is an objective one.

When considering an objective standard, there is substantial evidence in support of the finding that

Farmer pled guilty in reliance on the mistaken advice given to him by his trial lawyer. Mr. Holly told Judge Evans at the motion hearing that he did tell Farmer that the 85% rule would apply to him if he went to trial because he would be sentenced after the effective date of the new law. Farmer asserted in his motion to vacate the conviction and sentence that he relied upon his counsel's advice and that it caused him to plead guilty. Farmer also asserted that the trial court did not advise him at all about the 85% law. It is possible that the lower court could have "cured" Mr. Holly's ineffective advice when questioning Farmer at the hearing where he entered his guilty plea. *See Harveston v. State,* 597 So. 2d 641 (Miss. 1992). However, in reviewing the transcript of the entry of Farmer's guilty plea, Judge Evans, nor any other person, mentioned the 85% rule or its applicability to Farmer. There are three affidavits that state, "I heard Hon. David Holly inform my son that if he did not plead guilty and proceeded to trial that he would be sentenced under the 85% law." At the hearing on the motion to vacate the conviction and sentence the following exchange occurred:

> BY THE COURT: Do you wish to draft an order to your satisfaction, which I might or I might not amend, denying this plea and making a finding of fact that Mr. Holly told him . . told him this and the Court finds that he relied on it?
>
> BY MR. VINING: Yes, Your Honor. Yes , I'll draft an order and submit it to you.

This order was subsequently drafted and signed by Judge Evans. The order took judicial notice that 1.) the petitioner's attorney at the trial level below advised petitioner that Senate Bill 2175 would apply ex post facto in his case, 2.) the petitioner's attorney, according to his interpretation of Senate Bill 2175, advised his client to plead guilty, 3.) the petitioner in fact relied upon his attorney's advice concerning Senate Bill 2175 in entering his guilty plea, 4.) the petitioner was induced into waiving his constitutional right to take his case to trial for the sole reason that he believed, upon attorney's advice, that to do so he would risk a greater amount of mandatory time. There is nothing in the record that in any way cast doubt as to Farmer's reliance on the mistaken advice of Mr. Holly. As the order of dismissal reflects, Judge Evans denied Farmer's motion solely because he was uncertain of the application of Senate Bill 2175. The order states, "The Mississippi Supreme Court does not seem to have addressed this issue squarely, and until it does the Court does not wish to free petitioner or begin freeing numerous petitioners who are similarly situated." This Court finds that Farmer has met his burden of proving prejudice.

## CONCLUSION

In view of the findings by the trial court, the deficient performance of Mr. Holly compromised the integrity of the plea process, rendering the plea involuntary, and that but for counsel's mistaken advice, Farmer would not have pled guilty to aggravated assault. Farmer has satisfied both the deficient performance prong and the prejudice prong of the *Strickland v. Washington* test. Therefore, this Court reverses the denial of the motion to vacate the conviction and sentence and directs the lower court to allow Farmer to withdraw his plea of guilty.

**REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**