970 So.2d 1316 (2007)
Douglas JONES, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-CP-00598-COA.
Court of Appeals of Mississippi.
December 11, 2007.
*1317 Douglas Jones, pro se.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Douglas Jones[1] pleaded guilty to one count of sexual battery of a child and was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with fifteen years suspended and three years of post-release supervision, for a total of five years to serve. Almost a year after he entered his plea, Jones filed a petition for post-conviction relief with the Marshall County Circuit Court. The court denied the requested relief. Aggrieved, Jones appeals the denial and asserts that he was denied effective assistance of counsel, that the court erred in denying him sufficient time to prepare for trial, that the court erred in reinstating his guilty plea after setting it aside, and that his plea was invalid.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Jones was indicted on a single count of sexual battery on April 10, 2003. The charge related to Jones's alleged rape of his biological daughter. On May 19, 2004, Jones pleaded guilty, and the court accepted his guilty plea and sentenced him in *1318 accordance with the State's recommendation of twenty years, with fifteen years suspended, for a total of five years to serve. On May 13, 2005, Jones filed a petition for post-conviction relief that the court denied summarily, i.e., without a hearing. Jones appealed that decision, and on August 22, 2006, this Court remanded Jones's case to the circuit court for a hearing on whether there was merit to any of Jones's claims. Jones v. State, 936 So.2d 993 (Miss.Ct.App.2006). We specifically questioned whether Jones had been informed of the elements of the crime against him. Id. at 997-98 (¶¶ 14-20). On February 15, 2007, in a status hearing on remand that was not transcribed, the circuit court appointed Jones an attorney and set the case for trial on February 26, 2007.
¶ 4. However, on February 23, three days prior to the scheduled trial date, another hearing was held in which the court explained that it had assumed that the State would not contest the setting aside of Jones's guilty plea. When it became clear that the State wished to contest the setting aside of the plea, the court proceeded to hear the merits of Jones's claims. After hearing testimony from some of Jones's family members and from Kent Smith, the attorney who represented Jones when he initially pleaded guilty, the court found that there was no merit to any of Jones's post-conviction claims. Jones now appeals that decision.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 5. We will overturn the lower court's denial of post-conviction relief only if the court's findings are found to be clearly erroneous. Hannah v. State, 943 So.2d 20, 24(¶ 5) (Miss.2006). "[H]owever, questions of law are reviewed de novo." Id. (citing Boddie v. State, 875 So.2d 180, 183(¶ 6) (Miss.1999)).
1. Ineffective Assistance of Counsel
¶ 6. In his first claim of error, Jones contends that he was represented by ineffective counsel both during his initial plea of guilty and at the hearing on his post-conviction claims. To prove ineffective assistance of counsel, Jones must show "that counsel's performance was deficient and that the deficiency prejudiced the defense of the case." Branch v. State, 961 So.2d 659, 666(¶ 27) (Miss.2007) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Jones must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different." Ross v. State, 954 So.2d 968, 1004-05(¶ 78) (Miss.2007) (citing Davis v. State, 897 So.2d 960, 967(¶ 16) (Miss.2004)). Jones must also overcome the "strong presumption that the attorney's conduct falls within the wide range of reasonable professional conduct and strategy." Lattimore v. State, 958 So.2d 192, 200(¶ 24) (Miss.2007) (citing Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985)). An additional presumption that Jones must overcome is "that all decisions made during the course of trial were strategic." Id. (citing Leatherwood, 473 So.2d at 969).
¶ 7. Jones claims that his counsel at the post-conviction hearing, Thomas Bittick,[2] allowed the court "to clearly violate the Appellant's due process rights by not proceeding to trial as ordered on the 15th day of February 2007, which is clearly erroneous and manifestly wrong by URCCC Rule 9.02[.]" Rule 9.02 of the *1319 Uniform Rules of Circuit and County Court states in its entirety: "A docket of cases ready for trial shall be maintained by the clerk or the court administrator. Cases set by the judge for hearing must be ready at the appointed time." Nothing in the rule gives counsel any right to proceed to trial when the court has ordered otherwise. Although the court had set a trial date in anticipation of the State confessing Jones's motion, that action did not prevent the court from holding a hearing on the merits of Jones's PCR motion to determine if a trial would be warranted. There was nothing Bittick could have done to force the court to proceed to trial in lieu of a hearing to determine if Jones would be allowed to withdraw his previously-entered guilty plea. In fact, the record reveals that Bittick protested the court's decision to have the hearing rather than to set aside the plea and proceed to trial. There is no merit to this contention.
¶ 8. Jones also questions Bittick's failure to "answer/ask important questions to the former appointed counsel and the Appellant's sisters that would have showed the lack of investigation of the facts by the former appointed counsel. . . ." However, Jones does not elucidate exactly what questions Bittick should have asked. Bittick thoroughly questioned Smith, eliciting admissions that there were several alleged alibi witnesses that Smith had not contacted, and that Smith heavily encouraged Jones to plead guilty rather than go to trial. We have seen nothing to overcome the presumption that Bittick's choice of what to ask and what not to ask was anything other than sound trial strategy.
¶ 9. In addition to his criticism of Bittick's performance, Jones complains that Smith, his counsel during his initial guilty plea, could not recall that the victim's mother and stepfather were not tested for trichomoniasis, a sexually transmitted infection with which Jones and his daughter were both infected. We note that, at the time of the hearing, it had been almost three years since Jones's plea of guilty and Smith's investigation of Jones's case. Without further evidence of some sort of deficiency resulting from Smith's recollection of events, we find no merit to this particular assertion. Jones further complains that Smith appeared to be uneducated regarding some aspects of trichomoniasis. However, a review of the transcript reveals that Smith testified that he spoke to a doctor regarding how trichomoniasis is spread: "The medical proof is that I read [sic] and the conversation that I had with the local physician here in Oxford to try to understand what the parasite was, was that people had have [sic] asserted different possibilities even that it could live around a swimming pool but that the probable thing in the scientifically proven deal would be through physical contact. . . ." When questioned regarding whether trichomoniasis could be spread by vulva to vulva contact, Smith indicated that he did not know the answer to that question because he is "not a medical expert." Jones intimates that this admission indicates that Smith did not adequately research trichomoniasis. However, as we have already stated, Smith testified that he researched the infection and spoke with a doctor about how the infection might be spread.
¶ 10. Jones also criticizes Smith for encouraging him to plead guilty after he had made "repeated protestations of innocence." While Smith agreed that Jones had maintained his innocence for quite some time, Smith testified that there came a time, before Jones pleaded guilty, when Jones admitted that he had sexually assaulted his daughter. Therefore, Smith completely contradicted Jones's assertion that he pleaded guilty only due to coercion *1320 from Smith. Without further evidence that Smith somehow coerced Jones into pleading guilty, we find no merit to this contention.
¶ 11. We note that the evidence against Jones was quite considerable. His daughter, who was ten years old at the time of the assault, consistently maintained that it was her father who had raped her. Although there is conflicting evidence as to the exact date of the assault, it was consistently placed in the first week of January 2002. The sequence of events that the victim related also remained fairly consistent with only minor variations. In addition, the assault was discovered after the victim's family members noticed a strange-smelling discharge in her underwear. Believing that the victim had a yeast infection, they took her to a doctor. The doctor informed the family that the victim did not have a yeast infection, but rather had trichomoniasis, an infection that is almost always transferred through sexual contact. Although the victim initially would not say who had assaulted her, she eventually admitted that it was her father. She apparently had not told anyone what happened because Jones had threatened to hurt her if she did. Subsequent testing of Jones revealed that he was also infected with trichomoniasis. Regardless of whether the victim's other family members were tested for trichomoniasis, Jones's daughter never wavered from her identification of her father as her attacker. To put it succinctly, the evidence against Jones was considerable. Smith testified at the hearing that he explained the gravity of all this evidence to Jones, who eventually decided to plead guilty. We cannot say that there is any evidence that Smith improperly coerced Jones to plead guilty. At most, Smith may have given Jones a blunt assessment of his chances of success at trial, which may have led in part to Jones's decision to plead guilty.
¶ 12. Jones also claims that Smith perjured himself at the hearing when he stated that he had spoken with the only witnesses whose contact information Jones had provided. The record reveals that Jones had provided Smith with more than the three witnesses with whom Smith spoke. However, Smith explained that there were other witnesses that Jones had provided the names of, but that, after speaking with Jones, Smith did not believe that the witnesses would have any valuable information. Therefore, Smith did not spend any time talking to those witnesses. Jones claimed that the witnesses would be able to testify that he was in Georgia until January 4, 2002. Some of the evidence indicated that the assault occurred as early as January 1, 2002. However, the indictment specifically pinpointed the assault as occurring on January 5, 2002. Smith also interviewed the victim and the victim's mother, who may have confirmed that an alibi for January 1 through January 4 would be of no help. In addition, Jones has not provided any affidavit or statement from any of these alleged alibi witnesses to prove that they would have even testified as he suggests. Therefore, even if his attorney was deficient in not calling the individuals, Jones has failed to show any prejudice resulting from that deficiency.
¶ 13. Jones specifically argues that there was an alibi witness, Jerrica Jones, that "could testify that the alleged victim spent the entire time at the Appellant's sister's house." To date, Jones has not provided any affidavit or any other evidence that Jerrica would testify as he claims. In the absence of any evidence as to the usefulness of her testimony, we cannot find that the outcome of Jones's indictment would have been any different had his attorney spoken to Jerrica. In other words, even if his counsel were deficient *1321 for failing to speak with this particular witness, Jones has not shown any prejudice flowing from that deficiency. Jones also criticizes his counsel at the hearing for failing to question Jones's sister, Yolanda, about the victim's location. As with Jerrica's testimony, Jones has provided nothing to show what Yolanda might or might not have testified to. In the absence of any evidence that she was willing to testify on Jones's behalf and was simply not given the opportunity to do so, we find that this specific contention is also without merit. We note that Yolanda testified after Jennifer, another sister, gave her testimony. Jennifer testified emphatically that her brother was guilty and that there was no evidence that could be presented that would exculpate him. Given the nature of Jennifer's testimony, Bittick might have determined that it was a more sound strategy to ask as few questions as possible of Yolanda, for fear of the harm that another such condemnation of Jones might do. In the absence of any more compelling evidence, such as a statement or affidavit by Yolanda that she would have been able to provide exculpatory evidence, we find that Jones has not shown that his counsel was deficient or that his defense was prejudiced.
¶ 14. Jones also claims that Smith was ineffective because he did not ask Annie Jones, Jones's mother, "if the statement by the alleged victim `that she was home alone until she [Annie] came home from work'" was accurate. He claims that had Smith done so, he would have discovered that "the statement was a statement of false pretense." As with the other witnesses that Jones points out, Jones has provided nothing to indicate that his mother had additional exculpatory knowledge that could help his case. In the absence of such evidence, we cannot find that his counsel was deficient, or that his defense was prejudiced.
¶ 15. This contention of error is wholly without merit.
2. Time to Prepare for Trial
¶ 16. Jones claims that the court erred in denying him and his appointed counsel adequate time to prepare for trial. This claim of error is entirely moot, as Jones never went to trial. The sole purpose of the hearing at issue was to determine whether the claims in his petition for post-conviction relief had any merit.
¶ 17. This contention of error is moot and without merit.
3. Reinstatement of Guilty Plea
¶ 18. Jones again cites Rule 9.02 of the Uniform Rules of Circuit and County Court, which he appears to claim means that the trial court had to proceed with trial after the case had initially been set for trial. Such is clearly not the law. The court did not abuse its discretion in having an evidentiary hearing rather than proceeding to trial. The court clearly explained why it initially set aside the plea, and why it revoked that decision once it became clear that the court's assumption regarding the State's plans was incorrect.
¶ 19. This claim of error is without merit.
4. Validity of Guilty Plea
¶ 20. Jones claims that the record does "not accurately reflect the nature of the charge and the element [sic] of the crime were not explained to the Appellant by his own competent counsel. There was no representation by the former appointed counsel that the elements were explained to the Appellant. Neither, was a factual basis presented. . . ." We find the above summary of what was shown in the record to simply be incorrect. Smith testified *1322 that he had clearly explained both the elements of the crime to Jones and the factual basis for the charge stating:
So I did in fact have family conferences in my conference room to review the discovery, the plea negotiations, update them on that as well as trial strategy. And on two separate occasions[,] Doug Jones with his two sisters and mother came to my conference room and reviewed the discovery. The indictment[,] all the elements contained within that as well as discussed trial strategy, the plea negotiations and all of that. And on one of those occasions . . . I even asked that a member of the district attorney's office . . . come over and make a profer [sic] of what . . . the evidence would be at trial.
Smith then gave a lengthy recitation of the evidence against Jones, much of which we have discussed above. Needless to say, Smith provided a factual basis for the charge against Jones. The State also asked Smith specifically: "And did you talk in detail about what the elements of the crime were and what we, what the State's proof would have to be at trial?" Smith responded: "Absolutely. We went through the indictment. The elements of the indictment. We went through what your factual basis was. In other words, the proof that you were going to submit to convince a jury as to each element of the crime."
¶ 21. Clearly, Smith testified that he described both the elements of the crime and the factual basis for the charge to Jones before Jones pleaded guilty. Jones's claim to the contrary is without merit. We see nothing in the record to indicate that Jones's plea was not knowingly and voluntarily entered. See Hannah, 943 So.2d at 25 (¶¶ 11-12).
¶ 22. This contention of error is also without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARSHALL COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Jones's name is spelled alternately throughout the record as either Douglas or Douglass. We use the former.
[2] Both the State's brief and the transcript of the hearing incorrectly identify Jones's attorney's as Thom Beddict, and Jones incorrectly identifies his attorney as Thomas Bittock. A review of motions filed by the attorney clarifies that his name is Thomas Bittick.