GRIFFIS, P.J.,
for the Court:
¶ 1. William Jackson appeals the dismissal of his motion for post-conviction collateral relief, “PCCR.” Jackson argues several issues that center on ineffective assistance of counsel, an involuntary guilty *1222 plea, and the circuit court’s abuse of discretion when it denied Jackson’s motion to withdraw his guilty plea. -We find no error and affirm the circuit court’s judgment.
FACTS
¶ 2. Jackson was stopped on February 1, 2008, at a checkpoint set up by the Clarke County Sheriffs Department and the South Mississippi Narcotics Task Force. Jackson was asked for his driver’s license. Jackson stated that he did not have his license. The agent asked him for his driver’s license number. Jackson replied that did not know it. The agent then asked for his social security number. Jackson did not know that number either. Jackson produced a rental agreement that showed he had rented the vehicle from his girlfriend, who had rented it from an agency in Louisiana.
¶ 3. Jackson then consented to a search of the vehicle. During the search, agents located a large Tide detergent box. When they found the box, Jackson began to run. The Tide box contained about 11,996 pills of different colors. The tests from the Mississippi Crime Lab revealed that a representative sample of each color of pill all contained methamphetamine. Jackson claims the Tide box was left by previous renters of the vehicle in Louisiana.
¶ 4. Jackson was arrested and transported to the county jail. On February 4, 2008, an arrest warrant was issued for the charge of trafficking a Schedule II controlled substance, methamphetamine. The next day, Jackson had his initial appearance and posted bond. He was set to return to circuit court on February 25, 2008. Nothing happened on that date, but Jackson was set to return to court on August 25, 2008. On August 25, 2008, Jackson’s name was not on the docket, presumably because the grand jury had not indicted him.
¶ 5. On February 25, 2009, the grand jury indicted Jackson. On March 2, 2009, the Clarke County Sheriffs Office issued a warrant for Jackson’s arrest. On May 4, 2009, Jackson surrendered and entered a plea of not guilty. His trial date was set for October 28, 2009. He received several plea offers in the days leading up to the trial date.
¶ 6. On October 28, 2009, Jackson pled guilty with an Alford plea. See North Carolina v. Alford, 400 U.S. 25, 37, 91 5.Ct. 160, 27 L.Ed.2d 162 (1970). Based on the plea agreement, the district attorney agreed to certain sentencing recommendations: a sentence of thirty years, with ten years to serve, twenty years suspended, and five years of post-release supervision. On December 8, 2009, Jackson was to return to court for sentencing. The sentencing recommendation was based on Jackson’s timely appearance at the sentencing hearing and a clean record in the time between his plea and his sentencing. The circuit court also stated that if Jackson failed to appear for sentencing, then his plea would be taken as a blind plea.
¶ 7. Jackson failed to appear for his sentencing hearing. Jackson was arrested in Louisiana and extradited to Mississippi. His sentencing was set for June 24, 2010. At the sentencing hearing, Jackson moved to set aside or withdraw his guilty plea and to dismiss his counsel. Initially, the circuit court denied both motions. The circuit court sentenced Jackson to thirty years, with fifteen years suspended, followed by five years of post-release supervision. Then, the circuit court allowed Jackson’s counsel to withdraw.
¶ 8. Jackson is now before the court on his PCCR motion, which was filed on May 6, 2011. In the motion, Jackson alleged that there were several occasions he tried to contact his attorney and his attorney *1223 was unresponsive. Jackson also alleged that the times he spoke to his attorney, his attorney did not know anything about his case and was not preparing for trial. Jackson alleged that the evening before the trial he was pressured into taking a plea deal because his attorney had failed to prepare a defense.
¶ 9. Jackson alleged that on his trial date he met his attorney outside of the courthouse and an argument ensued. Jackson alleged he told his attorney that he wanted a trial and was not going to take a plea. Jackson alleged that his attorney “pointed out the fact that regardless of his performance, or how [Jackson] felt about it, he was still without much of a defense, and that signing the plea petition was the best option under the circumstances.”
¶ 10. Jackson alleged that he then insisted on going to trial, and his attorney went back inside to tell the circuit court judge of Jackson’s decision. Jackson alleged that his attorney came back and said the judge was upset. His attorney stated that the judge said that if Jackson wanted a trial, it would be sometime in February 2010. Jackson alleged his attorney said that the judge said he would revoke Jackson’s bond and put him back in jail.
¶ 11. Jackson alleged his attorney next said that because of the “25% law,” he would actually serve only two and a half years. Jackson alleged that he hurriedly signed the plea petition without reading it and without a thorough explanation of it. Jackson alleged that on November 4, 2009, he told his attorney that he wanted to withdraw his plea. Jackson alleged his attorney said there was nothing he could do and hung up the phone. In the summer of 2010, Jackson’s attorney visited him a few times in jail to discuss Jackson’s options.
¶ 12. Jackson attached an affidavit from Jackson’s mother to his PCCR motion. Jackson’s mother stated that outside the courtroom on October 28, 2009, Jackson’s lawyer told him if he did not sign the plea agreement, his bond would be revoked and he would go back to jail. She stated that the lawyer said “the way the plea was written up that he would only get 10 years under the 25% law.” This is different from Jackson’s account of two and a half years. She stated that she and Jackson felt pressured, but did not state what they felt pressured to do.
¶ 13. On November 16, 2011, the circuit court issued an eighteen-page order that denied Jackson’s PCCR motion, finding the allegations lacked merit, and dismissed it as frivolous. Jackson filed his notice of appeal on November 28, 2011.
STANDARD OF REVIEW
¶ 14. We will not reverse a circuit court’s dismissal of a PCCR motion unless the circuit court’s decision was clearly erroneous. Madden v. State, 75 So.3d 1130, 1131 (¶ 6) (Miss.Ct.App.2011) (citation omitted). When reviewing questions of law, this Court’s standard of review is de novo. Id. (citation omitted).
ANALYSIS

1. Involuntary Guilty Plea

¶ 15. Jackson argues that his plea was not voluntary. Jackson argues that: (1) the circuit court failed to explain the effects of a suspended sentence and supervised release; (2) the circuit court failed to inform him that by entering a guilty plea, he waived certain constitutional rights, such as the right to a speedy trial; and (3) his plea was produced by fear, coercion, and misinformation.
¶ 16. A guilty plea is enforceable only if entered voluntarily and intelli *1224 gently. See Myers v. State, 583 So.2d 174, 177 (Miss.1991). A plea is voluntary and intelligent when the defendant knows the nature of the charge against him and the consequences of a guilty plea. Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992).
¶ 17. At Jackson’s plea hearing, the circuit court went over each of the elements of the charge. Jackson acknowledged that he was entering his guilty plea “freely, voluntarily and knowingly with a full understanding of all matters that are set forth not only in [his] indictment that charge[d][him] with [his] felony but in [ ]his petition to plead guilty.”
¶ 18. Great weight may be placed on a defendant’s sworn testimony given at a plea hearing because “[s]olemn declarations in open court carry a strong presumption of verity.” Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). A defendant faces a “high hurdle in recanting that testimony.” Pevey v. State, 914 So.2d 1287, 1290 (¶ 8) (Miss.Ct.App.2005). The only evidence offered by Jackson in support of his claim that his guilty plea was involuntary was his own unsupported assertions and his mother’s twelve-sentence affidavit.
¶ 19. Before Jackson entered his plea, the circuit court verified that Jackson understood and that his attorney had explained what rights he was giving up by pleading guilty. Jackson acknowledged that he wanted to plead guilty and wanted to give up those rights. Jackson acknowledged that was why he initialed the end of paragraph five of his plea petition. We address Jackson’s specific arguments in the sections below.

a. Failure to Explain the Effects of Suspended Sentence and Supervised Release

¶ 20. Jackson’s argument that the circuit court did not ensure that he understood his suspended sentence and supervised release is not supported by the record. The plea colloquy demonstrates that the circuit court explained the possible sentences:
Q. ... Do you understand that if convicted of that felony and sentenced under the enhanced statute, you could be sentenced to serve from not less than ten years, no more than sixty years with the [MDOC] and fined from zero to $2,000,000? Do you understand that?
A. Yes, sir.
[[Image here]]
Q. ... Paragraph 7 reflects a plea bargain agreement has been reached in your case, but you’re not going to receive that plea bargain agreement or be sentenced today. I’m going to go over first the plea bargain agreement, then explain to you how your deal works. The plea bargain agreement that you’ve reached with the District Attorney’s Office as I understand it is you will be sentenced to serve 30 years with the [MDOC] of which 20 years of that will be suspended, so you will have to serve 10 years in custody initially. That will be followed by five years post-release supervision. [ (Discussion of required payments.) ] ... [I]s that the plea bargain agreement you’ve reached with the District Attorney’s Office in your case and your understanding of how it works?
A. Yes, sir.
[ (Jackson’s attorney and the State both agreed it was their understanding as well.) ]
Q. ... Now, the way your deal works is if you timely show up at sentencing hearing and you don’t get arrested on any new felonies between today and that sentencing hearing, your sen *1225 tence will be the plea bargain agreement that you’ve reached with the State. On the flip side, if you do violate — if you either don’t show up at that sentencing hearing timely at 9:00 or you get arrested on a new felony, then whenever we pick you up and hold that sentencing hearing your plea will be treated as a plea in the blind. That is, I can sentence you to any lawful sentence that I could under the statute.... Now, is that your understanding of what you’re doing this morning and your understanding of how it works?
A. Yes, sir.
As the record reflects; Jackson understood the plea bargain that he reached with the State.
¶ 21. In Smith v. State, 919 So.2d 989, 993 (¶ 9) (Miss.Ct.App.2005), the PCCR petitioner argued that her plea was involuntary because she was not informed of the “effects” of supervised release, or that she could be imprisoned again if she violated the terms of her release. There, the PCCR petitioner’s participation in the post-release supervision program “in no way affected the length of the sentence imposed by the trial court, but only affected the form of [her] confinement.” Id. at 994 (¶ 10). The circuit court was not required to explain that the MDOC could reclassify her confinement status and imprison her again for violations of her supervised release. Id.
¶ 22. Here, the circuit court was not required to explain to Jackson the details of the “effects” of post-release supervision. This issue is without merit.

b. Failure to Inform-that a Guilty Plea Waived Certain Constitutional Rights, such as the Right to a Speedy Trial

¶ 23. Jackson argues that the circuit court did not advise him of the constitutional rights he waived when he pled guilty. However, the record demonstrates the opposite.
Q. Now Paragraph 5 sets out certain constitutional rights or guarantees that you and every defendant are entitled to receive if you were to plead not guilty and you went to trial; but by pleading guilty this morning, you would be giving up each of these rights under paragraph 5 because you will not have a trial. Do you understand that?
A. Yes, sir.
Q. Have you read Paragraph 5 in its entirety?
A. Yes, sir.
Q. Have you gone over each of those rights with your attorney?
A. Yes, sir.
Q. And [your attorney] explained each of those rights to you and answered any questions you might have had?
A. Yes, sir.
Q. All right. Do you now understand each of those rights under Paragraph 5 that you are giving up at this time by pleading guilty?
A. Yes, sir.
Q. And that is what you want to do?
A. Yes, sir.
Q. And that is acknowledged by your initials at the end of Paragraph 5?
A. Yes, sir.
¶ 24. Additionally, Jackson’s plea petition contradicts his argument that his guilty plea was involuntary. “The plea petition was not an oral statement in open court, but it was a sworn document presumptively prepared with an appreciation of its fateful consequences.” Ward v. State, 879 So.2d 452, 455 (¶ 11) (Miss.Ct.App.2003). A plea petition is similar to a sworn statement made before the court *1226 and “may be used to discredit post-plea allegations.” Id.
¶ 25. Jackson initialed Paragraph 5 of the plea bargain agreement and swore:
I understand that I may plead “NOT GUILTY” to any offense charged against me. If I choose to plead “NOT GUILTY” the Constitution guarantees me:
(a) the right to a speedy and public trial by jury;
(b) the right to see, hear, and face in open court all witnesses called to testify against me; and the right to cross-examine those witnesses.
(c) the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses in my favor;
(d) the right to have the assistance of a lawyer at all stages of the proceedings;
(e) the presumption of innocence, i.e.[,] the State must prove beyond a reasonable doubt that I am guilty;
(f) the right to take the witness stand at my sole option; and, if I do not take the witness stand, I understand the jury may be told that this shall not be held against me;
(g) the right to appeal my case to the Mississippi Supreme Court if I am convicted at a trial on the charge(s) in the indictment.
Knowing and understanding the Constitutional guarantees set forth in this paragraph, I hereby waive them and renew my desire to enter a plea of guilty.
¶ 26. Jackson’s arguments here ignore his sworn plea petition and his testimony before the court when he pled guilty. The circuit court informed Jackson that a guilty plea waived certain constitutional rights. Additionally, the plea petition addressed the right to a speedy trial. Accordingly, based on a thorough review of the record, we find that Jackson’s guilty plea was entered voluntarily and intelligently. Therefore, we find this issue is without merit.
c. Plea Produced by Fear, Coercion, and Misinfonnation
¶ 27. Jackson next argues that his counsel coerced him to plead guilty. “It is [Jackson’s] duty to justify his arguments of error with a proper record, which does not include mere assertions in his brief, or the trial court will be considered correct.” See Dearman v. State, 910 So.2d 708, 711 (¶ 8) (Miss.Ct.App.2005) (internal quotation marks omitted).
¶ 28. A review of the transcript from the plea hearing demonstrates that the circuit court thoroughly questioned Jackson to ensure that his guilty plea was freely and voluntarily given.
Q. Do you feel like anyone has put any pressure on you to make you plead guilty this morning?
A. No, sir.
Q. Do you feel like anyone is tricking you or manipulating you in any way to make you plead guilty this morning?
A. To the best of my knowledge, no, sir. I’ve — from my understanding from the way he explained it to me, I understand basically what you’re saying.
Q. Just do you feel like anybody is tricking you or manipulating you in any way to make you plead guilty right now?
A. No, sir.
¶ 29. Further, Jackson declared in his plea petition:
*1227 [N]o officer or agent of any branch of government (Federal, State or Local) or Judge has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence or probation, or any form of leniency if I plead “GUILTY” except: NONE.
¶ 30. There is no evidence in the record to indicate that Jackson’s plea was coerced. Jackson’s mother’s affidavit and Jackson’s bare assertions in his' appellate brief and PCCR motion do not overcome the strong presumption that his sworn statements in court and in his petition were true. After reviewing the plea colloquy and the thorough line of questioning by the circuit court, we conclude that Jackson’s guilty plea was not coerced. Therefore, Jackson’s argument that his plea was involuntary due to coercion is without merit.

2. Ineffective Assistance of Counsel

¶ 31. Jackson argued in his PCCR motion that he received ineffective assistance of counsel because his counsel failed to properly investigate his case, interview witnesses, and request an examination of the State’s evidence. Jackson argued that his counsel failed to request a speedy trial, investigate the State’s delay with the grand jury, and inquire into any Fourth Amendment violations.
1132. To prove ineffective assistance of counsel, Jackson must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Jackson to show both prongs. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, Jackson must “show that there is a reasonable probability that, but for counsel’s unprofessional erroi’S, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052.
¶ 33. As this case involves a guilty plea, Jackson must show that, but for counsel’s performance, he would have gone to trial, and the outcome would have been different. Mitchell v. State, 58 So.3d 59, 62 (¶¶ 14-15) (Miss.Ct.App.2011). Jackson has made no such showing.

a. Speedy Trial and State’s Delay in Indicting

¶ 34. The Mississippi Supreme Court has held that a voluntary guilty plea waives the right to a speedy trial. Anderson v. State, 577 So.2d 390, 391-92 (Miss.1991). As' we have already found that Jackson voluntarily pled guilty, Jackson waived his right to a speedy trial. Further, Jackson swore in his plea petition that he knew and understood that by pleading guilty, he waived his right to a speedy trial.
¶ 35. Additionally, Jackson argues that his counsel failed to investigate the State’s delay in presenting the charge to the grand jury. Mississippi Code Annotated section 99-1-5 (Supp.2012) provides that for certain crimes, a person shall not be prosecuted unless the prosecution is commenced within two years after the commission of the crime. The State had two years in which to indict Jackson, and the State did so within one year and twenty-five days of his arrest. Therefore, these issues are without merit.
b. Failure to Suppress: Illegal Checkpoint, Involuntary Consent,- Unrea- . sonable Search and Seizure, Illegal Arrest and Detention
¶ 36. Jackson argues that his attorney failed to investigate Fourth *1228 Amendment matters or attempt to suppress evidence related to an illegal checkpoint, involuntary consent, unreasonable search and seizure, and illegal arrest and detention. A guilty plea waives certain Fourth Amendment violations, including illegal searches. King v. State, 738 So.2d 240, 241 (¶¶ 4-5) (Miss.1999). The United States Supreme Court has explained:
[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.
Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).
¶ 37. Jackson waived the alleged Fourth Amendment violations with his voluntary guilty plea. Therefore, this issue has no merit.
c. Pretrial Preparation: Failure to Investigate, Interview Witnesses, and Request Examination of State’s Evidence
¶ 38. Jackson argues that he received ineffective assistance of counsel because his counsel had not prepared a defense before the trial date. Jackson argues that his attorney failed to investigate his case, interview witnesses, and request an examination of the State’s evidence. Jackson is obligated to provide affirmative proof of ineffective assistance of counsel and prejudice to support his claims.
¶ 39. Jackson’s attorney fulfilled his duty “to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel’s judgments.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Considering Jackson’s attorney’s strategy to pursue a plea bargain, his decision not to investigate was reasonable given the deference we afford to a counsel’s judgment.
¶ 40. Even assuming that the attorney’s failure to investigate was deficient performance, Jackson has not shown prejudice. Jackson has not told this Court “what facts ... a further investigation would have revealed or uncovered” and how this would have affected his decision to plea guilty. See Hebert v. State, 864 So.2d 1041, 1045 (¶ 10) (Miss.Ct.App.2004). All Jackson argues is that his attorney did not interview witnesses and did not inspect certain evidence.
¶ 41. A petitioner is required to “allege with specificity and detail the claimed ineffective assistance and how such actions, or inactions, prejudiced him.” Garner v. State, 864 So.2d 1005, 1008 (¶ 13) (Miss.Ct.App.2004) (citation omitted). Jackson does not specifically allege how such an investigation would have impacted his case favorably.
¶ 42. Jackson has not shown that knowledge of facts from an investigation would have caused his counsel to vary from his advice to take a plea bargain. See King v. State, 503 So.2d 271, 275 (Miss.1987). While Jackson states that his girlfriend, her friend, and the rental clerk would have all corroborated his story, he fails to explain how such information would have changed the outcome. Since Jackson has failed to show prejudice, his allegations of failure to investigate do not rise to the level of ineffective assistance of counsel. Therefore, this issue has no merit.

3. Abuse of Discretion with Motion to Withdraw, Guilty Plea

¶ 43. Jackson argues that the trial court abused its discretion when it *1229 denied his motion to withdraw his guilty plea. The decision of whether to permit a defendant to withdraw a guilty plea lies within the discretion of the circuit court. Burrough v. State, 9 So.3d 368, 372-73 (¶ 11) (Miss.2009). Uniform Rule of Circuit and County Court Practice 8.04(A)(5) states that “[i]t is within the discretion of the court to permit or deny a motion for the withdrawal of a guilty plea.”
¶ 44. Based on the facts already discussed in Jackson’s other issues, we find that Jackson voluntarily entered his guilty plea and that the circuit court did not abuse its discretion when it denied Jackson’s motion to withdraw his guilty plea. Therefore, this issue has no merit.
¶ 45. In summary, Jackson’s plea was voluntary; Jackson received effective assistance of counsel; and the circuit court had discretion to permit or deny Jackson’s motion to withdraw his plea. Because we find that the issues Jackson argues have no merit, we affirm the circuit court’s denial of his PCCR motion.
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY DENYING THE MOTION FOR POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.